UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMALIA DIAZ TORRES, surviving spouse of ELEAZOR TORRES GOMEZ, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 08-CV-0185-CVE-PJC |
| CINTAS CORPORATION, LAVATECH, INC., CHARLES BENSON, STEVE JORDAN, and TOMMY COCANOUGHER, | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Now before the Court is Plaintiff's Motion to Remand and Brief in Support (Dkt. # 14). Plaintiff asks the Court to vacate its previous opinion and order (Dkt. # 13) dismissing Charles Benson, Steve Jordan, and Tommy Cocanougher as parties, and to remand the case to Tulsa County District Court due to lack of subject matter jurisdiction.

**I.**

Plaintiff Amalia Diaz Torres, the surviving spouse of Eleazor Torres Gomez, alleges that Gomez was an employee of Cintas Corporation ("Cintas") and, on March 6, 2007, Gomez was operating machinery manufactured by Lavatech, Inc. ("Lavatech"). Plaintiff claims that Gomez suffered "trauma and thermal injury" after using the machinery and died as a result of his injuries. Dkt. # 9, at 28. Plaintiff received workers compensation benefits following Gomez's death. Dkt. # 14, at 4-5; Dkt. # 15, at 3. On July 16, 2007, plaintiff filed a lawsuit in Tulsa County District

Court alleging that Cintas and Lavatech negligently caused plaintiff's death.[1] The complaint further alleges that defendants Cintas and Benson "allowed [Gomez] to work on dangerous machinery without supervision" and that defendants Benson, Jordan, and Cocanougher, in their capacity as employees of Cintas, failed to monitor or properly train Gomez. Dkt. # 9, at 30. Without any other factual allegations, plaintiff alleges that Benson, Jordan, and Cocanougher intentionally engaged in conduct causing Gomez's death. In compliance with Okla. Stat. tit. 12, § 2008(A), the complaint simply alleges that plaintiff seeks damages in excess of $10,000.

From the face of the complaint, it was not clear if plaintiff was seeking over $75,000 in damages and, thus, the requirements for diversity jurisdiction under 28 U.S.C. § 1332 were not satisfied. Defendants served requests for admission on plaintiff asking her to admit or deny whether the amount in controversy exceeded $75,000. Plaintiff refused to respond to the requests for admission and stated that such information was "not discoverable." Dkt. # 2-3, at 14-16. Defendants unsuccessfully attempted to resolve the discovery dispute with plaintiff and, after plaintiff continued to refuse to provide discovery responses, filed a motion to compel in state court. On March 4, 2008, defendants took Torres' deposition and asked her questions concerning Gomez's future earning capacity with Cintas. Torres stated that her husband made approximately $25,000 per year at Cintas and he expected to work for at least 20 years. Dkt. # 9, at 54-55. She also stated

---

[1] It is not clear from the complaint if plaintiff intends to allege a negligence claim against Cintas and Lavatech or whether Count One of the complaint should be construed as a manufacturer's products liability claim. Count One includes language suggesting that Lavatech manufactured an "unreasonably dangerous and defective product," but she also alleges that Lavatech and Cintas "failed to inspect, service, monitor and service machinery." Id. Plaintiff further alleges that "the negligence of [d]efendants" caused Gomez's death. Id. At this time, it is unnecessary to determine the exact nature of plaintiff's claims against Cintas and Lavatech.

2

that she anticipated Gomez's salary to increase over time and he would likely have earned more than $25,000 per year. Id.

On April 3, 2008, defendants filed a notice of removal in this Court asserting that both elements of diversity jurisdiction were present. The notice of removal states that plaintiff is a citizen of Oklahoma. Cintas is incorporated in and has its principal place of business in Ohio. Lavatech is incorporated in and has its principal place of business in Connecticut. Defendants admits that Benson, Jordan, and Cocanougher are citizens of Oklahoma, but they argue that plaintiff fraudulently joined these defendants to defeat diversity jurisdiction. On April 22, 2008, the Court sua sponte entered an opinion and order finding that it has subject matter jurisdiction over this case, because both elements of diversity jurisdiction are present. The Court found that complete diversity between the parties existed due to the fraudulent joinder of the non-diverse defendants. Dkt. # 13, at 3. The Court also determined that defendants provided sufficient evidence to establish that the amount in controversy exceeded $75,000. Based on the Court's finding that Benson, Jordan, and Cocanougher were fraudulently joined, the Court dismissed plaintiff's claims against these defendants.

## II.

Plaintiff has filed a motion to remand this case to state court arguing that this Court lacks subject matter jurisdiction and that defendants Benson, Jordan, and Cocanougher were not fraudulently joined. Plaintiff asserts that the Court acted improperly by sua sponte considering its own subject matter jurisdiction, and she asks the Court to vacate its opinion and order finding that

removal was appropriate.[2] Defendants respond that they have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000 and the Court properly dismissed the non-diverse defendants as fraudulently joined.

## A.

Plaintiff argues that the Court lacks subject matter jurisdiction, because defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. Under 28 U.S.C. § 1447(c), a case must remanded if at any time before final judgment it appears that the court lacks subject matter jurisdiction. Initially, the Court notes that federal courts are courts of limited jurisdiction. With respect to diversity jurisdiction, "[d]efendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

In order for a federal court to have diversity jurisdiction, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). The Tenth Circuit has clarified the analysis which a district

---

[2] To the extent that plaintiff challenges the Court's decision to sua sponte consider the issue of subject matter jurisdiction, her motion is moot. She has filed a motion to remand and the Court will review her motion under the standard applicable to such motions. Although the Court has previously entered an opinion and order considering its subject matter jurisdiction, the Court declines to treat plaintiff's motion as a motion to vacate or a motion to reconsider and will review the jurisdictional issues de novo. However, the law is clear that a federal district court has an obligation to consider its own subject matter jurisdiction even if the parties have not raised the issue and plaintiff's assertion that the Court improperly raised the issue of subject matter jurisdiction is meritless. See 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006).

4

court should undertake in determining whether an amount in controversy is greater than $75,000. The Tenth Circuit stated:

> [t]he amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the "<u>underlying facts</u> supporting [the] assertion that the amount in controversy exceeds [$75,000]." Moreover, there is a presumption against removal jurisdiction.

<u>Laughlin v. Kmart Corp.</u>, 50 F.3d 871, 873 (10th Cir. 1995) (citations omitted) (emphasis in original); <u>Hughes v. E-Z Serve Petroleum Marketing Co.</u>, 932 F. Supp. 266 (N.D. Okla. 1996) (applying <u>Laughlin</u> and remanding case); <u>Barber v. Albertson's, Inc.</u>, 935 F. Supp. 1188 (N.D. Okla. 1996) (same); <u>Martin v. Missouri Pacific R.R. Co. d/b/a Union Pacific R.R. Co.</u>, 932 F. Supp. 264 (N.D. Okla. 1996) (same); <u>Herber v. Wal-Mart Stores</u>, 886 F. Supp. 19, 20 (D. Wyo. 1995) (same); <u>Homolka v. Hartford Ins.. Group, Individually and d/b/a Hartford Underwriters Ins.. Co.</u>, 953 F. Supp. 350 (N.D. Okla. 1995) (same); <u>Johnson v. Wal-Mart Stores, Inc.</u>, 953 F. Supp. 351 (N.D. Okla. 1995) (same); <u>Maxon v. Texaco Ref. & Marketing Inc.</u>, 905 F. Supp. 976 (N.D. Okla. 1995) (same).

Further, "both the requisite amount in controversy and the existence of diversity must be affirmatively established on the face of either the petition or the removal notice." <u>Laughlin</u>, 50 F.3d at 873; <u>see also</u> <u>Associacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (Anpac) v. Dow Quimica de Colombia S.A.</u>, 988 F.2d 559, 565 (5th Cir. 1993) (finding defendant's conclusory statement that "the matter in controversy exceeds [$75,000] exclusive of interest and costs" did not establish that removal jurisdiction was proper); <u>Gaus v. Miles, Inc</u>, 980 F.2d 564 (9th Cir. 1992) (mere recitation that the amount in controversy exceeds $75,000 is not sufficient to establish removal jurisdiction). Where the face of the complaint does not affirmatively establish the

requisite amount in controversy, the plain language of <u>Laughlin</u> requires a removing defendant to set forth, in the removal documents, not only the defendant's good faith belief that the amount in controversy exceeds $75,000, but also <u>facts</u> underlying the defendant's assertion. In other words, a removing defendant must set forth specific facts which form the basis of its belief that there is more than $75,000 at issue in the case. The removing defendant bears the burden of establishing federal court jurisdiction at the time of removal, and not by supplemental submission. <u>Laughlin</u>, 50 F.3d at 873; <u>see</u> <u>Herber</u>, 886 F. Supp. at 20 (holding that the jurisdictional allegation is determined as of the time of the filing of the notice of removal). The Tenth Circuit has clearly stated what is required to satisfy that burden. As set out in <u>Johnson v. Wal-Mart Stores, Inc.</u>, 953 F. Supp. 351 (N.D. Okla. 1995), if the face of the petition does not affirmatively establish that the amount in controversy exceeds $75,000, then the rationale of <u>Laughlin</u> contemplates that the removing party will undertake to perform an economic analysis of the alleged damages with <u>underlying facts</u>.

In this case, defendants rely on Torres' deposition testimony to show that the amount in controversy exceeds the jurisdictional amount. Torres testified that she expected Gomez to work for another 20 years and, at the time of his death, Gomez earned about $25,000 per year. She also testified that his earning capacity was expected to increase and he anticipated earning more than $25,000 in the future. Plaintiff argues that this evidence is insufficient to establish the amount in controversy, because plaintiff's damages are not measured by Gomez's earning capacity. Under Oklahoma law, the following elements of damages are recoverable in a wrongful death action:

> The loss of consortium and the grief of the surviving spouse, which shall be distributed to the surviving spouse.
>
> The mental pain and anguish suffered by the decedent, which shall be distributed to the surviving spouse and children, if any, or next of kin in the same proportion as personal property of the decedent.

6

> The pecuniary loss to the survivors based upon properly admissible evidence with regard thereto including, but not limited to, the age, occupation, <u>earning capacity</u>, health habits, and probable duration of the decedent's life, which must inure to the exclusive benefit of the surviving spouse and children, if any, or next of kin, and shall be distributed to them according to their pecuniary loss.
>
> The grief and loss of companionship of the children and parents of the decedent, which shall be distributed to them according to their grief and loss of companionship.

Okla. Stat. tit. 12, § 1053(B) (emphasis added). In her complaint, plaintiff alleges that she is entitled to damages for each of the four categories listed above. Dkt. # 9, at 29. The statute specifically permits plaintiff to recover damages based on "the age, occupation, earning capacity, health habits, and probable duration of the decedent's life." Okla. Stat. tit. 12, § 1053(B). Therefore, defendant could rely on the decedent's earning capacity to establish the amount in controversy.

Plaintiff has refused to respond to requests for admissions concerning the amount in controversy, and defendants argue that the Court should consider plaintiff's non-responsive discovery responses as a factor when determining if the amount in controversy exceeds $75,000. Local rules of civil procedure require defendants to serve a discovery request upon plaintiff, such as an interrogatory or request for admission, asking plaintiff to state whether she seeks more than $75,000 in damages. LCvR 81.3 (defendants must attach discovery responses from at least one plaintiff as to the amount in controversy). The law is clear that defendants must still establish the amount in controversy by a preponderance of the evidence, even if plaintiff fails to provide adequate discovery responses. <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001); <u>Barber</u>, 935 F. Supp. at 1191. While plaintiff's refusal to provide discovery responses does not provide an independent basis for removal, it can be a factor in the Court's determination that the amount in controversy requirement is satisfied. <u>Rubel v. Pfizer, Inc.</u>, 361 F.3d 1016, 1020 (7th Cir. 2004);

Wilbanks v. North American Coal Corp., 334 F. Supp. 2d 921, 925-26 (S.D. Miss. 2004); Schwenk v. Cobra Mfg. Co., 322 F. Supp. 2d 676, 680 (E.D. Va. 2004).

The Court finds that defendants have shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. Torres' deposition testimony shows that Gomez would likely have earned more than $75,000 during his life and Gomez's earning capacity is an element of damages under section 1053(B).[3] Therefore, defendants could rely on Torres' assessment of Gomez's earning capacity as evidence that the amount in controversy exceeds the jurisdictional amount. The Court also finds that plaintiff's refusal to respond to discovery concerning the amount in controversy is a relevant factor in the Court's analysis. If plaintiff's damages did not exceed $75,000, she should have responded to a request for admission on this issue and clearly stated her position. As one federal court has stated, a plaintiff's refusal to respond to jurisdictional discovery is often an attempt to "'have it both ways' by pursuing [a] diversity case in state court without limiting himself to damages below the threshold amount that triggers the [d]efendant's right to remove the case to this Court." Logsdon v. Duron, Inc., 2005 WL 1163095, *4 (M.D. Fla. May 17, 2005). Although plaintiff's refusal to respond to discovery requests is not an independent basis to establish the amount in controversy, the Court finds that it is a relevant factor in this case. Based on the evidence produced by defendants and plaintiff's refusal to respond to jurisdictional discovery,

---

[3] Plaintiff implies that defendants' removal was untimely under 28 U.S.C. § 1446(b), because defendants should have been aware of Gomez's salary from the inception of the case. However, without Torres' deposition testimony, defendants would have lacked any evidence concerning Gomez's future earning capacity and the case would not have been removable. Plaintiff does not develop this argument in her motion to remand and, without more, plaintiff has not shown that defendants' removal was untimely.

the Court finds that defendants have met their burden under Laughlin to prove that the amount in controversy exceeds $75,000.

## B.

Plaintiff also argues that Benson, Jordan, and Cocanougher were not fraudulently joined as parties because she has some possibility of recovery against these defendants. She claims that joinder of these parties defeats diversity jurisdiction because, if Benson, Jordan, and Cocanougher are not dismissed, each defendant is not diverse from plaintiff. Defendants argue that plaintiff has no possibility of recovery against Benson, Jordan, and Cocanougher and, thus, these defendants were fraudulently joined.

The Supreme Court has recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument. Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F. 2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot, 378 F.2d at 882. Defendants can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery

9

against the non-diverse defendant. Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006). If defendants can show that the non-diverse defendants were fraudulently joined, the parties will be completely diverse and the Court may exercise subject matter jurisdiction over this case. See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder.").

Plaintiff argues that she has stated intentional tort claims against Benson, Jordan, and Cocanougher, and that she may proceed with this claim under Parret v. Unicco Service Company, 127 P.3d 572 (Okla. 2005), even though she has already obtained workers compensation benefits. She alleges that her factual allegations that the non-diverse defendants willfully and intentionally failed to train, monitor, or supervise Gomez could permit recovery against these defendants. Defendants respond that these are allegations of negligence rather than an intentional tort and, under Parret, unsupported allegations of willful or intentional conduct are insufficient to avoid the exclusive remedy provision of the Oklahoma Workers' Compensation Act, Okla. Stat. tit. 85, § 1, et seq. ("OWCA").

Under Oklahoma law, "the liability prescribed in [the OWCA] shall be exclusive and in place of all other liability of the employer and any of his employees . . . ." Okla. Stat. tit. 85, § 12. In Parret, the Oklahoma Supreme Court recognized a limited exception to the general rule that workers compensation provides the exclusive remedy for workplace injuries. If an injured employee has recovered workers compensation benefits, claims of negligence against the employer based on the conduct that harmed the employee are barred. Parret, 127 P.3d at 574-75. However, an employer

is not shielded from liability for intentional torts under Okla. Stat. tit. 85, § 12. Parret, 127 P.3d at 574-75. The Oklahoma Supreme Court adopted the following standard for intentional conduct:

> In order for an employer's conduct to amount to an intentional tort, the employer must have (1) desired to bring about the worker's injury or (2) acted with the knowledge that such injury was substantially certain to result from the employer's conduct. Under the second part of this standard, the employer must have intended the act that caused the injury with knowledge that the injury was substantially certain to follow. The issue is not whether injury was substantially certain to occur, but whether the employer knew it was substantially certain to occur.

Id. at 579. It is not sufficient for a plaintiff to allege that an employer acted willfully or intentionally without stating supporting facts in the complaint that could create liability under this standard. The Oklahoma Supreme Court stated:

> Mere allegations of intentional conduct will not circumvent the Workers' Compensation Act. The worker must allege facts which 'plausibly demonstrate' that the employer's conduct was intentional under the 'substantial certainty' standard. "In terms of intentional tort then, the use of the word 'intent' in allegations 'is not a talisman that can change the allegations into colorable claims . . . .'"

Id (internal citations omitted).

Plaintiff claims that she has sufficiently plead intentional torts against Benson, Jordan, and Cocanougher and these parties should not be dismissed as fraudulently joined. The Court has reviewed the complaint and finds that plaintiff's claims against the non-diverse defendants are ordinary negligence claims that are barred by Parret. Plaintiff clearly alleges that Gomez's injuries were sustained "in and during the course of his employment for Cintas." Dkt. # 9, at 28. In Count Two of her complaint, plaintiff states that Benson "allowed [Gomez] to work on dangerous machinery without supervision or providing devices used to protect [Gomez] from injury." Id. at 29. She makes the blanket allegation that this claim against Benson is a Parret claim, but provides

no additional facts that could plausibly demonstrate intentional misconduct by Benson. Count Three of the complaint alleges that Benson, Jordan, and Cocanougher were:

> employees of [Cintas] given the responsibility of supervising and monitoring the work of [Gomez]. That [Benson] failed to monitor the work of [Gomez] by leaving his post at the time [Gomez] died in and during the course of his employment. That [Jordan and Cocanougher] failed to properly train [Gomez]. That accordingly defendants Benson, Jordan and Cocanougher's actions were willful, intentional and reckless, which directly caused the death of [Gomez].

Id. at 30. Claims for failure to monitor, supervise, or train are negligence claims, and plaintiff can not avoid the exclusive remedy provision of the OWCA simply by stating that defendants acted willfully, intentionally or recklessly. See Armstrong v. Carr, 77 P.3d 598, 603 (Okla. Civ. App. 2003) (permitting an injured employee to sue a co-employee for assault and battery but dismissing claims against another co-employee for negligent hiring, training, and supervision as barred by Okla. Stat. tit. 85, § 12). These conclusory allegations of intentional misconduct are precisely the type of allegations that the Oklahoma Supreme Court described as insufficient in Parret.[4]

Plaintiff's claims against Benson, Jordan, and Cocanougher are barred under Okla. Stat. tit. 85, § 12 and defendants have carried their burden to demonstrate that there is no possibility plaintiff can recover against the non-diverse defendants. Therefore, dismissal of the non-diverse defendants was appropriate and the Court has subject matter jurisdiction under 28 U.S.C. § 1332.

---

[4] Plaintiff has provided evidence that Cintas was aware of previous injuries caused by the subject machinery. Dkt. # 17, Ex. A. However, the evidence does not reference Benson, Jordan, or Cocanougher and it does not support plaintiff's allegations that these defendants "acted with the knowledge that such injury was substantially certain to result from the employer's conduct." Parret, 127 P.3d at 579.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand and Brief in Support (Dkt. # 14) is **denied**.

**DATED** this 19th day of June, 2008.

　　　　　　　　　　　　　　　　　　　CLAIRE V. EAGAN, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT