**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AMALIA DIAZ TORRES, surviving spouse of ELEAZAR TORRES GOMEZ  )<br>)<br>) | Case No. 4:08-cv-00185-CVE-TLW |
| Plaintiff,  )<br>) | |
| -v-  )<br>) | |
| CINTAS CORPORATION, et al.  )<br>) | |
| Defendants.  )<br>)<br>) | |

**DEFENDANT CINTAS CORPORATION'S TRIAL BRIEF
ON ELECTION OF REMEDIES**

**I.    INTRODUCTION**

The Oklahoma Supreme Court has clearly held that a plaintiff who has two remedies available to her for the same injury and elects one of them will be barred from pursuing the other if the following three elements are present: (a) two or more remedies [are] in existence; (b) the available remedies [are] inconsistent; [and] (c) choice of one remedy and its pursuit to conclusion [is] made with knowledge of alternatives that are available." *Pryse Monument Company v. District Court of Kay County*, 595 P.2d 435, 437 (Okla. 1979).  The parties do not dispute that the first element is present in this case, and Oklahoma Supreme Court and appellate-court decisions show that the second element is also satisfied as a matter of law, because the Workers' Compensation system and employer-intentional-tort suits are fundamentally inconsistent remedial schemes.  The sole remaining issue, therefore, is whether the third element is present.

There is evidence that at the time Plaintiff's lawyers filed her Workers' Compensation claim, they knew she might also be able to bring an intentional-tort claim against Cintas and, in fact, were pursing both remedies simultaneously on her behalf. This knowledge is imputed to Plaintiff under Oklahoma law. *Renberg v. Zarrow*, 667 P.2d 465, 470 n.16 (Okla. 1983). Consequently, there is a material question of fact concerning whether the third element of the *Pryse Monument* test is present here, and it is one that only a jury can resolve. To deny the jury the opportunity to decide this issue on the ground that it would be unjust or against public policy to bar Plaintiff from pursuing her intentional-tort claim because she elected to receive Workers' Compensation benefits shortly after her husband's death would contradict standing Oklahoma Supreme Court and appellate-court precedent and would eviscerate the third prong of *Pryse Monument* for the reasons set forth below. Consequently, the Court should allow Cintas the opportunity to present evidence at trial about Plaintiff's or Plaintiff's attorneys' knowledge of other available remedies and should allow the jury to decide whether the third *Pryse Monument* requirement has been satisfied.

## II.   FACTS

Mr. Torres died on March 6, 2007. Shortly thereafter, Ms. Torres or her son had contact with the Mexican consulate, and it recommended Lino Ochoa and Ricardo Garcia of The Law Office of Garcia & Karam, L.L.P. ("the Garcia firm"), located in McAllen, Texas, to represent Plaintiff in connection with Mr. Torres' death. (Exh. A, Torres Dep. at 57:20-59:5.) The lawyers at the Garcia firm were the first ones to have contact with Ms. Torres. (*Id.* at 57:20-58:1.) Believing that Ms. Torres needed an attorney in Tulsa, Oklahoma, the Garcia firm recommended that Ms. Torres retain Frasier, Frasier & Hickman, L.L.P. ("the Frasier firm"), which Ms. Torres subsequently did. (*Id.* at 59:6-12.)

The Frasier firm bills itself as specializing in Workers' Compensation law (Exh. B, Practice Overview; Exh. C, About Frasier, Frasier & Hickman, LLP), and J.L. Franks, one of the Frasier-firm attorneys representing Ms. Torres, lists his first "area of practice" as being "Workers' Compensation Law" (Exh. D, Franks Profile). On March 16, 2007, J.L. Franks and Frank Frasier filed a Form 3 Workers' Compensation complaint on Ms. Torres' behalf, seeking Workers' Compensation benefits for Mr. Torres' death. (Exh. E, Form 3.) Although Cintas began making payments to Ms. Torres shortly after the accident (Dkt. 286, Mem. in Supp. at 1, Exh. 1 ¶¶ 4, 5.a. & Exh. B), it denied her formal application for Workers' Compensation benefits pending an investigation of Mr. Torres' death (Exh. F, Form 10). On May 15, 2007 the Workers' Compensation Court issued an order finding accidental death and awarding Ms. Torres death benefits. (Exh. G, May 15, 2007 Order.) The court issued a *nunc pro tunc* order on May 29, 2007, modifying its prior order but keeping the award of benefits in place. (Exh. H, May 29, 2007 Order.)

In the meantime, on March 22, 2007—only six days after the Frasier firm filed Ms. Torres' Form 3 and long before her Workers' Compensation claim was pursued to conclusion—the Garcia firm sent a Freedom-of-Information-Act request to the Occupational Safety & Health Administration, seeking information about accidents at other Cintas facilities. (Exh. I, 4/3/07 OSHA Response at 1-2 (noting that March 22, 2007 FOIA request asked for, among other things, Cintas accident reports and stipulated settlement); Exh. J, 5/14/07 OSHA Response at 1-2 (noting that March 22, 2007 FOIA request asked for, among other things, OSHA penalty payment report dated 12/30/05 of accident at other facility).) Plaintiff's attorneys received responses to their FOIA request on April 3, 2007 and May 14, 2007. (Exh. I, 4/3/07 OSHA Response at 1; Exh. J, 5/14/07 OSHA Response at 1.) As Plaintiff's attorneys' filings

3

with the Court have made clear, Plaintiff's counsel intended to use this evidence to prosecute an intentional-tort claim against Cintas. (Dkt. 327.) From this evidence, a reasonable jury could infer that before Ms. Torres was awarded the Workers' Compensation benefits that she is now receiving, and likely even before the Frasier firm filed a Workers' Compensation claim on Plaintiff's behalf, Plaintiff's attorneys, and perhaps Plaintiff herself, were aware that she could bring an employer-intentional-tort claim against Cintas and were investigating this claim.

### III.     LAW AND ARGUMENT

It is well established under Oklahoma law that "an employee who has two remedies for the same injury and has prosecuted one of them to conclusion (securing an award or judgment), is barred from resort to the other remedy." *Dyke v. St. Francis Hosp., Inc.*, 861 P.2d 295, 302 (Okla. 1993) (*citing Pryse Monument*, 595 P.2d at 437-38). "This rule, which in effect erects a res judicata bar, is applicable to [workers'] compensation claimants who may also press a tort remedy." *Id.* It "will preclude the claimant from vexing the employer with a second suit." *Pryse Monument*, 595 P.2d at 437. "Once a remedy is chosen and then pursued to conclusion, the point of no return is reached though there has been no satisfaction, much less vindication, of the right." *Id.*

There are three elements that "must coincide to make preclusion by prior election of remedies applicable: (a) two or more remedies must be in existence; (b) the available remedies must be inconsistent; [and] (c) choice of one remedy and its pursuit to conclusion must be made with knowledge of alternatives that are available." *Pryse Monument*, 595 P.2d at 437. The first element is clearly present, as there are two remedies in existence—the Workers' Compensation payments Plaintiff has received and will continue to receive and the monetary damages she hopes to recover through her intentional-tort claim. Further, as discussed below, these remedial schemes are plainly inconsistent. Finally, there is evidence that Plaintiff willingly chose to

4

accept Workers' Compensation payments while knowing that she could also bring an employer-intentional tort claim, which a jury must consider to determine whether the third element is present.

      A.    **The Remedy of Workers' Compensation Is Inconsistent with the Remedy of a Common-Law Damages Award.**

There can be no doubt that Plaintiff's Workers' Compensation remedy is inconsistent with the remedies she would receive through her intentional-tort claim against Cintas. The Oklahoma Supreme Court has held that remedies are "coexisting but inconsistent," as distinguished from "concurrent and consistent," where they are "separate, alternative, mutually exclusive and cognizable in different forums" and "are governed by distinctly varying theories and measures of recovery." *Pryse Monument*, 595 P.2d at 436-37. Applying this definition, Oklahoma courts have held that the remedies afforded by the Workers' Compensation scheme are "inconsistent" with the remedies afforded by intentional-tort claims against employers. *Griffin v. Baker Petrolite Corp.*, 99 P.3d 262, 267 (Okla. Ct. App. 2004) (finding that decision to accept Workers' Compensation payments barred intentional-tort suit under *Pryse Monument*'s election-of-remedies doctrine).

In *Griffin*, an employee who had previously received Workers' Compensation benefits brought a claim against his employer for intentional infliction of emotional distress arising out of the same injury. *Id.* at 264, 266-67. The trial court found that "Plaintiff's election of workers' compensation remedies[] barred prosecution of Plaintiff's claim for intentional infliction of emotional distress." *Id.* at 267. The employee appealed, asserting the same argument that Plaintiff makes now—namely, that the "Defendant/employer's intentional act[] concerns an injury wholly outside workers' compensation coverage[]" and that his intentional tort action, therefore, was "not an action based on a prior election of an inconsistent remedy." *Id.* at 266.

5

The appellate court flatly rejected this argument, noting that because Plaintiff's intentional-tort claim arose out of the same injury for which he already received Workers' Compensation benefits, his decision to pursue and accept those benefits barred his prosecution of the intentional-tort action. *Id.* at 267. It thus affirmed the ruling of the trial court. *Id.*

Plaintiff attempts to avoid the same result here by perplexingly arguing that "no court has recognized election of remedies . . . based on receipt of worker's compensation benefits as a bar to a subsequent intentional tort claim" and that the Oklahoma Supreme Court in *Parret v. UNICCO Service Company*, 127 P.3d 572 (Okla. 2005) somehow rejected the notion that accepting workers' compensation payments can bar an intentional-tort suit. Neither assertion is true. Plaintiff's first argument simply ignores *Griffin* (even though it was cited in the Court's order raising the election-of-remedies question) and, therefore, can be summarily dismissed.[1] Plaintiff's second argument is equally meritless, because there is nothing in *Parret* to indicate that the Oklahoma Supreme Court disagreed with or even considered the rationale underlying *Griffin*'s holding. *See Parret*, 127 P.3d at 573-81 (no discussion of issue in majority opinion).

In *Parret*, the only two questions before the Oklahoma Supreme Court were whether Oklahoma recognized an employer-intentional-tort claim based on a substantial certainty of injury and whether a court can consider particular types of evidence in determining principal- or statutory-employer status. 127 P.3d at 573-74. In his dissent, Justice Opala opined that the court should not have answered the first certified question because there was a preliminary question

---

[1] Plaintiff also notes that in the federal district court decision in *Parret* issued after the certified question was answered, the court commented that it is "questionable" whether the plaintiff's intentional-claim was "inconsistent" with her receipt of Workers' Compensation benefits. (Dkt. 399 at 4 (*citing Parret v. UNICCO Serv. Co.*, No. CIV-01-1432-HE, 2006 WL 752877, at *2 n.7 (W.D. Okla. Mar. 21, 2006)).) As the court noted, though, "it [was] unnecessary to resolve the issue" because it found the third element—that the plaintiff knowingly chose one remedy over the other—was not satisfied. *Parret*, 2006 WL 752877, at *2 & n.7. Its comment is therefore *dicta*, not its holding, and certainly does not serve to undermine the holding of a state appellate court applying its own state's law and finding that those remedies are, in fact, inconsistent.

6

that needed to be answered by the certifying court—whether "plaintiff's earlier selection of the [workers'] compensation remedy that she pursued to a successful conclusion" barred her claim. *Id.* at 582 (Opala, J., dissenting). According to Justice Opala, if plaintiff's claim were barred by her election of remedies and thus were "nonactionable," then the question of whether a substantial-certainty intentional tort fell outside the immunity that the Workers' Compensation Act granted to employers would be moot, because "[n]o party is ever called upon to raise its immunity from liability against a claim of another which is nonactionable." *Id.* at 583. Although the majority did not sign on to this reasoning, the most its silence shows is that it believed the question of immunity should logically be decided by the trier of fact to determine whether the claim was barred by the election of remedies. It by no means shows, as Plaintiff claims, that the majority rejected the argument that the election of Workers' Compensation benefits bars an intentional-tort claim. There is simply nothing in *Parret* to support Plaintiff's argument.

In fact, *Parret* actually supports the opposite finding—that Workers' Compensation benefits and tort damages are inconsistent remedies. As *Parret* explained, Workers' Compensation is an "industrial bargain" in which the employee gave up the right to bring a common-law tort action against his employer in exchange for guaranteed medical and wage benefits, while the employer gave up certain common-law defenses in exchange for reduced exposure to liability. 127 P.3d at 578. In other words, Workers' Compensation is a *substitute* for tort suits.[2] Hence, there is no doubt that these remedies are "separate, alternative, mutually exclusive and cognizable in different forums" and "are governed by distinctly varying theories

---

[2] To this point, Oklahoma's Workers' Compensation statute itself provides, "The liability prescribed by Section 11 of this title [i.e., liability for Workers' Compensation payments] shall be exclusive and in place of all other liability of the employer . . . at common law or otherwise, for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee . . . ." Okla. Stat. tit. 85, § 12 (2010).

7

and measures of recovery." *Pryse Monument*, 595 P.2d at 436-37.  Consequently, they are "inconsistent" within the meaning of *Pryse Monument*.

> **B.     There Is a Question of Fact as to Whether Plaintiff Willingly Chose to Receive Workers' Compensation Benefits While Knowing that an Intentional-Tort Suit Was Also Available.**

The evidence currently available to Cintas, and the evidence that Cintas will develop at trial, raises a question of fact for the jury concerning whether Plaintiff chose to accept Workers' Compensation benefits with knowledge that an intentional-tort suit was also available to her.  It is firmly established under Oklahoma law that a client is bound by her attorney's knowledge. *E.g.*, *Renberg v. Zarrow*, 667 P.2d 465, 470 n.16 (Okla. 1983) ("In the absence of fraud, notice or knowledge of attorney acquired during scope of employment is imputed to the client." (citations omitted)).  As set forth above, Plaintiffs' lawyers were simultaneously pursuing both Workers' Compensation benefits and an intentional-tort claim on Plaintiff's behalf when they began representing her. (*See* Exh. I, 4/3/07 OSHA Response at 1-2 (noting that March 22, 2007 FOIA request asked for, among other things, Cintas accident reports and stipulated settlement)); Exh. J, 5/14/07 OSHA Response at 1-2 (noting that March 22, 2007 FOIA request asked for, among other things, OSHA penalty payment report dated 12/30/05 of accident at other facility); Dkt. 327 (arguing that evidence of accidents at other facilities is relevant to prove employer-intentional-tort claim); Exh. E, Form 3 (indicating Workers' Compensation claim was filed on March 16, 2007).)  They had knowledge that both remedies were available before the time they filed Plaintiff's Workers' Compensation claim, and certainly before Plaintiff pursued that claim to conclusion on May 15, 2007. (Exh. I, 4/3/07 OSHA Response at 1 (noting that FOIA request was submitted on March 22, 2007); Exh. J, 5/14/07 OSHA Response at 1 (same).)  Likewise, Plaintiff's counsel received responses to their FOIA requests on April 3, 2007 and May 14, 2007, before Plaintiff's Workers' Compensation award was handed down. (Exh. I, 4/3/07 OSHA

8

Response at 1; Exh. J, 5/14/07 OSHA Response at 1; Exh. G, May 15, 2007 Order.) A jury could reasonably conclude from this evidence that at the time Plaintiff finished prosecuting her Workers' Compensation claim, and probably before she even filed that claim, she was aware that she could bring an intentional-tort suit against Cintas.

Plaintiff's trial brief on election of remedies offers no evidence or legal authority to undermine this conclusion. Instead, Plaintiff offers a speculative parade of horribles that supposedly will result if the Court and jury find that her election of Workers' Compensation benefits bars her from proceeding with her intentional-tort suit. (Dkt. 399 at 6-7.) But contrary to Plaintiff's implicit suggestion, the Oklahoma Supreme Court did not carve out a policy-based exception to its *Pryse Monument* rule. Instead, it explicitly held in a later opinion, "The law provides but one method to avoid the *Pryse Monument* bar. If the employer used fraud or coercion to induce an employee to bring a claim in compensation, the employee may proceed in a district court to set aside the award for extrinsic fraud." *Dyke*, 861 P.2d at 302.[3]

Though it may seem harsh to relieve a plaintiff from the election-of-remedies bar in only these limited circumstances, this "result . . . tracks, with fidelity, the beaten path of long-

---

[3] Plaintiff intimates that she can meet this standard because "Cintas . . . began paying worker's compensation benefits within six days of Mr. Torres' death," and given the speed with which these payments were made, there "[e]ffectively . . . would [have been] . . . no opportunity for Mr. Torres' surviving family to conduct an investigation of the plant conditions and practices that could even give rise to a civil tort lawsuit outside the worker's compensation scheme" if the Court were to apply the election-of-remedies bar in this case. (Dkt. 399 at 7.) But as explained above, the payments Cintas made to Ms. Torres shortly after Mr. Torres' death were a gift; Cintas did not begin making payments on Ms. Torres' Workers' Compensation claim until after it conducted its investigation into Mr. Torres' death. (Dkt. 286, Mem. in Supp. at 1, Exh. 1 ¶¶ 4, 5.a. & Exh. B; Exh. F, Form 10.) Furthermore, Plaintiff had not pursued her Workers' Compensation claim "to conclusion," and therefore had not triggered the election-of-remedies bar, until May 15, 2007. (Exh. G, May 15, 2007 Order; *Dyke*, 861 P.2d at 302 (noting that *Pryse Monument* bar does not become effective until one remedy has been "prosecuted . . . to conclusion (securing an award or judgment)").) By that date, Plaintiff's counsel had been investigating her potential intentional-tort claim for approximately two months. (Exh. I, 4/3/07 OSHA Response at 1 (noting Plaintiff's FOIA request was submitted on March 22, 2007); Exh. J, 5/14/07 OSHA Response at 1 (same).) Consequently, even assuming that courts have the power to except a party from *Pryse Monument*'s election-of-remedies rule for policy reasons, which they do not, *see Dyke*, 861 P.2d at 502 (fraud or coercion are only exceptions), Plaintiff's particular policy argument would fail.

established precedent." *Pryse Monument*, 595 P.2d at 438. As the Oklahoma Supreme Court explained,

> [f]undamental fairness in litigation process cannot be afforded except within a framework of orderly procedure. No area of the law may lay claim to exemption from the range of its basic strictures[,] not even workers' compensation law. Chaos, caprice and ad hoc pronouncements would inevitably follow from any departure.

*Id.* If the Court were to deny the jury the opportunity to decide the factual issue of whether Plaintiff knowingly elected one remedy over the other on the ground that "public policy" would relieve her of the election-of-remedies bar even if it did apply, then the Court would effectively be eviscerating the third prong of the *Pryse Monument* rule, because a plaintiff's knowing election of Workers' Compensation benefits would *never* bar her from bringing a subsequent tort claim. Oklahoma law does not permit such a result. *See Dyke*, 861 P.2d at 302 (where three elements of *Pryse Monument* are present, plaintiff can avoid bar only by proving fraud or coercion); *Pryse Monument*, 595 P.2d at 437 (plaintiff's receipt of Workers' Compensation benefits barred his subsequent tort claim because all three prerequisites to election-of-remedies bar were present); *Griffin*, 99 P.3d at 267 (holding same in employer-intentional-tort suit). Consequently, the Court should permit the jury to decide the issue of whether Plaintiff elected to receive Workers' Compensation benefits and pursued that remedy to conclusion while either she or her attorneys knew that she could also pursue an intentional-tort claim against Cintas.

## IV.   CONCLUSION

For the foregoing reasons, Cintas respectfully requests that the Court find, in accordance with Oklahoma law, that Workers' Compensation benefits and intentional-tort claims are inconsistent remedies. Cintas further respectfully requests that the Court allow the jury to decide the factual issue of whether Plaintiff, either personally or through her attorneys, knew she might

10

be able to bring an intentional-tort suit against Cintas at the time she pursued her Workers' Compensation claim to conclusion.

                                            Respectfully submitted,

/s/  Gregory M. Utter
Gregory M. Utter
Matthew K. Buck
KEATING MUETHING & KLEKAMP PLL
ONE E. Fourth Street, Suite 1400
Cincinnati, OH 45202
Phone: (513) 579-6400
Fax: (513) 579-6457

Gene Robinson, OBA #10119
THE ROBINSON LAW FIRM, P.C.
1100 Remington Tower
5810 East Skelly Drive
Tulsa, Oklahoma 74135
Phone: (918) 587-2311
Fax: (918) 587-2317

*Attorneys for Defendant, Cintas Corporation*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 6, 2010, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system and will serve counsel of record via electronic mail and ordinary mail.

                                          /s/  Gregory M. Utter
                                          Gregory M. Utter

3392367.1