# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMALIA DIAZ TORRES, surviving spouse of  ELEAZAR TORRES GOMEZ | ) ) ) | Case No. 4:08-cv-00185-CVE-TLW |
| Plaintiff, | ) ) | |
| -v- | ) ) | |
| CINTAS CORPORATION, | ) ) | |
| Defendant. | ) | |

## PROPOSED JURY INSTRUCTIONS AND SPECIAL
## INTERROGATORIES WITH ARGUMENTS IN SUPPORT

Pursuant to this Court's pre-trial order, Defendant Cintas Corporation ("Cintas") submits the following proposed jury instructions and special interrogatories (and arguments in support) for the Court's consideration, and respectfully requests that this Court adopt and deliver the attached proposed jury instructions to the jury during the trial on the claims of Amalia Diaz Torres ("Plaintiff" or "Mrs. Torres").  Cintas reserves the right to modify and/or supplement these proposed instructions and to raise objections to the form or content of the Court's final jury instructions and/or interrogatories.

Respectfully submitted,

/s/ Gregory M. Utter
Gregory M. Utter
Matthew K. Buck
KEATING MUETHING & KLEKAMP PLL
1 E. Fourth Street, Suite 1400
Cincinnati, OH 45202
Phone: (513) 579-6400
Fax: (513) 579-6457

Gene Robinson, OBA #10119
THE ROBINSON LAW FIRM, P.C.
1100 Remington Tower
5810 East Skelly Drive
Tulsa, Oklahoma 74135
Phone: (918) 587-2311
Fax: (918) 587-2317

*Attorneys for Defendant, Cintas Corporation*

**Defendant's Proposed Preliminary Remark No. 1**

**JURY'S DUTIES – CAUTIONARY INSTRUCTIONS – CORPORATION AS PARTY**

All parties to a lawsuit are entitled to the same fair and impartial consideration, whether they are individuals (such as the plaintiff, Mrs. Torres) or whether they are corporations (such as the defendant, Cintas).

*Source*: O.S. § 1.6 (modified slightly to refer to specific parties)

**Defendant's Proposed Preliminary Remark No. 2**

**CAUTIONARY INSTRUCTION – INTENTIONAL TORT / NEGLIGENCE**

After both parties have finished, I will instruct you on the law, and it will be your duty to apply the law to the facts as determined by you, and thus render a verdict.

I will instruct you now, however, that the issues that need to be resolved in this case concern whether Cintas engaged in an intentional act that Cintas was substantially certain would result in Mr. Torres's death. Mrs. Torres must prove by the greater weight of the evidence that a specific Cintas manager or supervisor actually realized and understood that Mr. Torres was substantially certain to die as a result of an intentional act by Cintas. I will explain in more detail at the end of the case what Mrs. Torres has to prove in order to meet this standard.

This is not a case about negligence. "Negligence" is the failure to exercise ordinary care to avoid injury to another's person or property. "Ordinary care" is the care which a reasonably careful person would use under the same or similar circumstances. The issue in this case is not whether Cintas exercised ordinary care to avoid an injury, nor is the issue about whether Mr. Torres's death could have been avoided. The issues to be resolved concern whether Cintas committed an intentional act knowing that it was substantially certain that act would cause Mr. Torres to die, and whether an intentional act by Cintas was in fact the direct cause of Mr. Torres's death.

*Source*: *Parret v. Unicco Serv. Co.*, 127 P.3d 572, 579 (Okla. 2005). The definition of negligence used in this proposed instruction is from O.S. § 9.2.

**Defendant's Proposed Jury Instruction No. 1**

<u>**NO SPECULATION / INFERENCES**</u>

Your decision must be based upon probabilities, not possibilities. It may not be based upon speculation or guesswork.

You are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified when considered with the aid of the knowledge which you each possess in common with other persons. You may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which you find to have been established by the testimony and evidence in the case.

*Source*: O.S. §§ 1.4 (excerpt); 3.3

**Defendant's Proposed Jury Instruction No. 2**

**<u>EXPERT WITNESS</u>**

There has been introduced the testimony of witnesses who are represented to be skilled in certain areas. Such witnesses are known in law as expert witnesses. You may consider the testimony of these witnesses and give it such weight as you think it should have, but the value to be given their testimony is for you to determine. You are not required to surrender your own judgment to that of any person testifying as an expert or otherwise. The testimony of an expert, like that of any other witness, is to be given such value as you think it is entitled to receive.

*Source*: O.S. § 3.21

**Defendant's Proposed Jury Instruction No. 3**

<u>**EMPLOYER LIABILITY – SUBSTANTIAL CERTAINTY TEST – GENERAL INSTRUCTION**</u>

For Mrs. Torres to recover from Cintas for Mr. Torres's death, she must prove by the greater weight of the evidence that:

1.  Cintas committed an intentional act; and

2.  Cintas's intentional act caused Mr. Torres's death; and

3.  Cintas knew that Mr. Torres's death was substantially certain, and not merely likely, to occur as a direct result of its intentional act.

If Mrs. Torres is unable to prove any one of these three points by the greater weight of the evidence, then she has not proved her claim and you must find for Cintas.

I will now explain each of these three points in detail.

*Source*: O.S. § 6.16 (modified) *citing Parret v. Unicco Serv. Co.*, 127 P.3d 572, 579 (Okla. 2005); *Price v. Howard*, 2010 WL 925175 at *4 (Okla. Mar. 16, 2010).

<u>**Argument In Support:**</u>

Cintas proposes modifying the standard instruction to include references to an intentional "act" rather than conduct.  For reasons that are more fully explained below (*see* Argument in Support of Defendant's Proposed Jury Instruction No. 4), this more accurately reflects the intentional tort standard set forth by the Oklahoma Supreme Court in *Parret v. Unicco Serv. Co.*, 127 P.3d 572 (Okla. 2005), as recently clarified in *Price v. Howard*, 2010 WL 925175 at *4 (Okla. Mar. 16, 2010) ("Establishing that an employer has ***acted*** in a manner resulting in an employee's injuries being substantially certain presents a formidable barrier to recovery in tort.") (emphasis added).

The standard instruction contains the language "[y]ou may infer the knowledge of [Defendant] from the conduct of [Defendant] and all the surrounding circumstances."  Cintas

proposes removing that language.  Cintas is unaware of a recorded instance of a court using this instruction, and it is superfluous and unnecessary.

Jurors are always "permitted to draw such reasonable inferences from the testimony and exhibits as [they] feel are justified when considered with the aid of the knowledge which [they] each possess in common with other persons" (O.S. § 1.4), and Cintas proposes generally instructing the jurors as such (Defendant's Proposed Jury Instruction No. 1).   Adding the inference language to only one part of the operable legal standard improperly suggests to the jury that it should infer that Cintas had some knowledge, even though the jury is equally free to infer that Cintas had no such knowledge; that Cintas did not engage in an intentional act; that Cintas's act was not the direct cause of Mr. Torres's death; or any other fact or circumstance which – if demonstrated by the weight of the evidence – would require the jury to find for Cintas.

The standard instruction has also been modified to remove references to injury and replace them with "death," since death was the injury in this case and to refer to injuries and death as if they were separate issues could confuse the jury.  The standard instruction also informs the jury that liability can be established if a defendant "desired to bring about the injury," but states that if that level of intent is not claimed, the instruction should be struck.  As Plaintiff has not argued or claimed that Cintas desired to injure Mr. Torres, Cintas proposes striking that instruction.

Finally, Cintas proposes modifying the standard instruction to refer to the more detailed instructions below.  As the Court correctly noted at pre-trial, the standard *Parret* instruction is "bare bones" and more detailed instructions are appropriate and are included below.

**Defendant's Proposed Jury Instruction No. 4**

**<u>INTENTIONAL ACT</u>**

For Mrs. Torres to prove that "Cintas committed an intentional act," she must prove by the greater weight of the evidence that Cintas intended an act that caused Mr. Torres to die.  An act is something done or performed.

To find for Mrs. Torres, you must find by the greater weight of the evidence that Cintas directed Mr. Torres to act in the manner that caused his death.  It is not enough for her to prove that Cintas was simply aware that an injury could occur, but did nothing to stop it.  She must prove that Cintas affirmatively acted and that it knew its act was substantially certain to cause Mr. Torres's death.

*Source*: *Parret v. Unicco Serv. Co.*, 127 P.3d 572 (Okla. 2005); *Price v. Howard*, 2010 WL 925175 (Okla. Mar. 16, 2010).

<u>**Argument in Support**</u>

To prove the "intentional act" prong of an intentional tort claim under *Parret*, a plaintiff must do more than prove that the defendant was aware of a hazard but did nothing to prevent an injury.  She must prove that the defendant affirmatively *acted* with the knowledge that its act was "substantially certain" to injure plaintiff.  The *Parret* court explicitly required an affirmative act to create liability, holding that "for an employer's conduct to amount to an intentional tort, the employer must have … ***acted*** with the knowledge that such injury was substantially certain to result from the employer's conduct."  *Parret*, 127 P.3d at 579 (emphasis added).  The *Parret* court set forth this standard just one sentence after it indicated that "the [substantial certainty] standard must be clearly articulated and its parameters defined" (*id*.), therefore clearly stating that an employer must have intended an act – not an omission – that it was substantially certain would result in injury in order to have committed an intentional tort.  In this case, the jury must find that Cintas did more than simply allow Mr. Torres to engage in an activity that was likely or even substantially certain to lead to an injury; Plaintiff must prove that Cintas acted to cause his

death by affirmatively ordering Mr. Torres to engage in work that it knew was substantially certain to result in his death.

Although the *Parret* Court suggested, in dicta, that an employer who "failed" to act could still be substantially certain that an injury would occur, it did so only in the context of quoting Professor Prosser's treatise on intent. *Id.* The Court did not explicitly state that pure omissions could rise to the level of an intentional tort; to the contrary, it explained that its decision was "not intended to expand the narrow intentional tort exception to workers' compensation exclusivity." *Id.* There is not a recorded, pre-*Parret* Oklahoma case holding that an omission can be an employer intentional tort, such that the exception to workers' compensation exclusivity could apply. Nothing in the *Parret* decision suggests that it was expanding the exception; and a holding that mere knowledge of a potentially hazardous working condition and an alleged failure to correct that condition was more than negligence, and could rise to the level of an intentional tort, would dramatically expand the exception.

The Oklahoma Supreme Court recently affirmed that liability under *Parret* requires an affirmative act: "[e]stablishing that an employer has ***acted*** in a manner resulting in an employee's injuries being substantially certain presents a formidable barrier to recovery in tort." *Price*, 2010 WL 925175 at *4 (emphasis added). The *Price* court further clarified that a plaintiff must show that an employer "desired to bring about a worker's injury or ***acted*** with the knowledge that such injury was substantially certain to result from the employer's conduct." *Id*. This formulation of the test helps clarify the language in *Parret*. An omission may be sufficient to establish an intentional tort, but only where the defendant actually desired to injure the plaintiff. Here, only the "substantial certainty" theory of intentional liability is in play, as there is no allegation that Cintas (or any individual at Cintas) actually desired to injure Mr. Torres or cause his death.

Therefore, it is not enough for Plaintiff simply to prove that Cintas knew, or was even certain, that Mr. Torres would be injured or die; she also must prove that it was an intentional *act* on the part of Cintas that caused Mr. Torres's death.

Courts that have allowed *Parret* claims to proceed have done so only where there were allegations or evidence that an employer *affirmatively* acted.   *See McCullough v. Hackney Ladish, Inc.*, 2008 WL 240821 at *1 (W.D.Okla. Jun. 11, 2008) (denying motion to dismiss where Defendant allegedly "***directed*** [Plaintiff] to operate machinery with the knowledge that an injury was substantially certain to occur") (emphasis added); *Keesling v. Metalspand, Inc.*, 2009 WL 1212269 at *1 (W.D.Okla. Apr. 30, 2009) (denying motion to dismiss where Defendant allegedly "elected to ***remove*** safety equipment from [a] leveling machine… .") (emphasis added).   The *Parret* case itself involved allegations that plaintiff died while working on "hot" light fixtures, and the Plaintiff was only able to move past summary judgment because "evidence [was] submitted that [the Defendant's] supervisors not only were aware that employees worked on the emergency lighting system 'hot,' but ***directed*** them to do so."   *Parret v. Unicco Service Co.*, 2006 WL 75287 at *4 (W.D.Okla. Mar. 21, 2006).[1]   Plaintiff here must also point to some affirmative direction or other act by Cintas in order to prevail.

This is in accord with decisions in other jurisdictions.   The court *Martinez v. Southington Metal Fabricating Co.*, 101 Conn. App. 796, 802, 924 A.2d 150 (2007), applied Connecticut's "substantial certainty" standard, which was originally set forth in *Mingachos v. CBS, Inc.*, 196 Conn. 91, 491 A.2d 368 (1985) (a decision that the *Parret* Court relied on, *see* 127 P.3d at 579). In *Martinez*, the "plaintiff argued that the combined effect of safety violations and lack of training created a situation that would allow a trier of fact to find that the defendant intentionally

---

[1]   These appear to be the only three recorded decisions permitting a *Parret* claim to continue past a motion to dismiss or for summary judgment.   There are no recorded decisions actually finding liability for a claim asserted under *Parret*.

created a dangerous situation in which it had been substantially certain that [plaintiff's] injury would occur." *Martinez*, 101 Conn. App. at 805.  The court rejected this argument, because "[a] wrongful failure to act to prevent injury *is not the equivalent* of an intent to cause injury."  *Id.* (*quoting Melanson v. West Hartford*, 61 Conn. App. 683, 689 n.6, 767 A.2d 764 (2001)) (emphasis added).  *See also Ure v. Fineline Indus., Inc.*, 2004 WL 213171, at *2 (D. Conn. Jan. 29, 2004) (also holding that failure to prevent an injury is not the equivalent of intent to cause an injury); *Sullivan v. Lake Compounce Theme Park, Inc.*, 889 A.2d 810, 814 (Conn. 2006) ("failure to take effective remedial action does not translate to an affirmative intent to create an injury causing situation").

Other courts have rejected intentional tort claims under the "substantial certainty" standard where the allegations only involve a failure to act, rather than an affirmative act.  *See*, *e.g.*, *Kuhnert v. John Morrel & Co. Meat Packing, Inc.*, 5 F.3d 303, 305 (8th Cir. 1993) (applying South Dakota's "substantial certainty" test and holding that "the fact [Defendant] knew that the washers had in the past backsplashed hot water and burned some workers and … failed to take any corrective measures does not indicate that [Defendant] intended to burn[] them or [Plaintiff]."); *Smith v. Gen. Motors Corp.*, 172 Fed. Appx. 661, 668 (6th Cir. 2006) (applying Ohio "substantial certainty" test and upholding district court opinion that "the defendant's affirmative act must be more than merely passively condoning practices and procedures… ."); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) *quoting Boyer v. Louisville Ladder Co.*, 157 Mich.App. 716, 403 N.W.2d 210, 211 (1987) (dismissing intentional tort claim because claim that plaintiff was "injured as the result of her employer's 'failure to provide safe working conditions is essentially a claim that [she] was injured by the employer's negligence.'").

Given Plaintiff's focus on previous incidents, whether Cintas was aware of those incidents, and whether Cintas was aware that employees were engaged in certain activities, the jury may be led believe that simply proving some knowledge and passive conduct on the part of Cintas is enough to establish an intentional tort.  It is not, and the jurors should be instructed that they are required to find that Cintas affirmatively acted in a way that was it was substantially certain would cause Mr. Torres's death before they can find liability.

**Defendant's Proposed Jury Instruction No. 5**

**<u>DIRECT CAUSE</u>**

For Mrs. Torres to prove that Cintas's "intentional act caused Mr. Torres's death," she must prove by the greater weight of the evidence that Cintas's intentional act was the direct cause of Mr. Torres's death.  Direct cause means a cause which, in a natural and continuous sequence, produces injury and without which the injury would not have happened.  For Cintas's act to be a direct cause it is necessary that Mr. Torres's death must have been substantially certain to result from Cintas's act.

If Mrs. Torres is unable to prove *both* that Cintas affirmatively and intentionally acted *and* that those actions were the direct cause of Mr. Torres's death, then you must find for Cintas.  If you determine that Mr. Torres's own actions were the direct cause of his death, then you must find for Cintas.

*Source*: O.S. § 9.6 (modified); *Parret v. Unicco Serv. Co.*, 127 P.3d 572 (Okla. 2005); *Price v. Howard*, 2010 WL 925175 (Okla. Mar. 16, 2010).

<u>**Argument in Support**</u>

Plaintiff is required, as in any tort case, to prove direct (or proximate) cause.  The "substantial certainty" standard in *Parret* does not relieve Plaintiff of her obligation to prove that Cintas's intentional act, if any, was the direct cause of Mr. Torres's death.  *Parret*, 127 P.3d at 574 ("the employer must have intended the act that **caused** the injury with knowledge that the injury was substantially certain to follow" (emphasis added)).  *See also* O.S. § 6.16 (a plaintiff in a *Parret* case must prove that "Defendant's conduct **caused** injury to Plaintiff" (emphasis added)).  There is, however, no definition of "cause" provided in the standard *Parret* instruction. Therefore, Cintas proposes a modified version of the standard "direct cause" instruction used in negligence cases.

Moreover, if Cintas can demonstrate that the direct cause of Mr. Torres's death was his own affirmative decision to, *inter alia*, ignore his training, climb onto a moving conveyor, then jump up and down on top of a laundry jam with the dryer still running, then Plaintiff cannot meet the direct cause element of her claim and cannot prevail.  *See House v. Johnson Controls, Inc.*,

- 12 -

248 Fed. Appx. 645, 648 (6th Cir. 2007) ("Just as intervening actions by third parties can negate proximate causation, … so an injury cannot be certain to occur when the individual takes affirmative, deliberative action that brings about the harm." (internal citation omitted)).  Cintas proposes instructing the jury as such.

**Defendant's Proposed Jury Instruction No. 6**

## SUBSTANTIAL CERTAINTY – GENERALLY

To prove that "Cintas knew that Mr. Torres's death was substantially certain, and not merely likely, to occur as a direct result of its intentional act," Mrs. Torres must prove by the greater weight of the evidence that Cintas acted intentionally, knew that its intentional act was substantially certain to cause Mr. Torres's death, and that Cintas intended the conduct that resulted in Mr. Torres's death.  It is not enough to prove that Mr. Torres's death was substantially certain to occur; you must find that Cintas knew that Mr. Torres's death was substantially certain to occur.

You should not find for Mrs. Torres if you determine that Cintas believed it was merely likely for an injury to occur.  Nor would it be enough if you determine that Cintas knew there was a foreseeable risk of injury or death, a high probability of injury or death, or a substantial likelihood of injury or death.  Rather, Mrs. Torres must prove by the greater weight of the evidence that a Cintas manager or supervisor actually realized and understood that Mr. Torres was jumping on clothes at the mouth of a moving dryer and was substantially certain to die.

It is not enough for Mrs. Torres to prove that an unspecified injury to some employee was substantially certain to occur, or that some unspecified injury was inevitable.  Rather, she must prove that Cintas was substantially certain that Mr. Torres would die, or that Mr. Torres would be exposed to the exact danger that led to his death.

*Source*: *Parret v. Unicco Serv. Co.*, 127 P.3d 572 (Okla. 2005); *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373 (5th Cir. 2006); *McIntyre v. K-Mart Corp.*, 794 F.2d 1023, 1025 (5th Cir. 1986).

## Argument in Support

This first paragraph of this instruction is based entirely on the *Parret* decision, which sets forth a "narrow intentional tort exception to workers' compensation exclusivity."  *Parret*, 127 F.3d at 579.

The second paragraph of this instruction is necessary because thus far in this litigation, Plaintiff has focused on arguing that Cintas was aware that employees in Tulsa were, for example, climbing on moving conveyors to dislodge clothing jams.[2]  Plaintiff has argued in

---

[2] This claim is not supported by the evidence.  There is no testimony demonstrating that a manager or a supervisor was aware that employees were improperly dislodging jams.  In fact, the undisputed evidence is that Cintas trained its employees to turn off the conveyor and the dryer before removing jams, and as this Court has already held the evidence is undisputed that Cintas "provided oral training and demonstration to Torres, and Torres was advised … not to climb on an energized conveyor."  (Dkt. 227 at 16.)  Cintas therefore had no reason to suspect

opposition to summary judgment, for example, that Cintas "set the stage for the inevitable death of one or more of its employees."  Dkt. 131 at 5.  This is <u>not</u> the issue; the issue is whether Cintas was substantially certain that <u>Mr. Torres</u> would die.  As the *Parret* court made clear, to be liable for an intentional tort "the employer must have intended the act that caused ***the injury*** with knowledge that ***the injury*** was substantially certain to follow."  *Parret*, 127 F.3d at 579 (emphasis added).  The Oklahoma Supreme Court recently affirmed that "substantial certainty" refers to certainty about the injury the plaintiff actually suffered, and upheld a decision granting summary judgment to defendants in a *Parret* case because it could not "say that the employer's conduct amounted to an intentional tort or that the employer desired to bring about ***the worker's injury*** or acted with the knowledge that ***such injury*** was substantially certain to result from the employer's conduct."  *Price*, 2010 WL 925175, at *4 (emphasis added).

Other courts applying standards similar or identical to *Parret* have held that to prove an intentional tort, a plaintiff must show that the employer was substantially certain that the ***plaintiff*** would be injured, not just that some injury was likely to occur to some employee.  In *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373 (5th Cir. 2006), which applied Louisiana's "substantial certainty" test, the court upheld an order dismissing a complaint even though the court had "no doubt" that plaintiff could demonstrate that defendant was aware that the latex gloves it required employees to use created an "8 to 12 percent risk that [plaintiff] and [defendant's] other healthcare employees could develop latex reactions" (*id.*).  The court held this did not state an intentional tort claim – even though it appears an injury to some employee at some point was inevitable – because plaintiff did "not allege that [defendant] knowingly or purposely acted to harm ***her.***"  *Id.*  (emphasis added).  And the court in *McIntyre v. K-Mart*

---

that any of its employees were dislodging jams without turning off the conveyor, much less to be substantially certain that Torres himself was doing so.

*Corp.*, 794 F.2d 1023, 1025 (5th Cir. 1986) also upheld a decision denying summary judgment to a plaintiff who argued that defendant "in failing or refusing to institute an accident prevention program … [knew] that a certain percentage of its employees [would] be injured due to its intentional policy." *Id.* The court noted that if all a plaintiff had to prove was that there was a statistical certainty that some employee at some time would be injured, then "any employer engaged in a business in which workers are frequently, or perhaps even occasionally, injured would be deemed by law to have intended those injuries… and an employer could be held liable for an intentional tort on the basis of conduct that does not even rise to the level of ordinary negligence." *Id.* This would be an illogical reading of the "substantial certainty"/*Parret* standard, which the Oklahoma Supreme Court has made clear is an extremely narrow exception to worker's compensation exclusivity.

Without Cintas's proposed jury instruction, the jury might believe that simply proving knowledge of a potential injury, or even an inevitable injury to some employee, is enough to prove an intentional tort claim. Such a finding would be contrary to the law. The jury must be clearly instructed that they are to determine whether Plaintiff can prove that Cintas was substantially certain that Mr. Torres – specifically – would be injured. Any lesser showing requires the jury to find for Cintas.

**Defendant's Proposed Jury Instruction No. 7**

**SUBSTANTIAL CERTAINTY – PRIOR INCIDENTS**

If you determine that the greater weight of the evidence proves that Cintas (through a manager or supervisor) was aware of certain prior incidents that occurred after Cintas became aware of the incident in Ohio in 2004, those prior incidents are only relevant to the issue of whether Cintas was substantially certain that Mr. Torres would die if those prior incidents were substantially similar to Mr. Torres's conduct that led to his death.  A prior incident is only substantially similar if it put Cintas on notice of the precise risk or exact danger that caused Mr. Torres's death.

If you determine that the greater weight of the evidence proves that Cintas (through a manager or supervisor) knew that employees were engaged in the same conduct that led to Mr. Torres's death, but that Cintas also knew that those employees did not die or become injured as a result of that conduct, then Cintas cannot be said to have been "substantially certain" that this conduct would lead to Mr. Torres's death, and you must find for Cintas.

*Source*: *Smith v. General Motors Corp.*, 172 Fed. Appx. 661, 670 (6th Cir. 2006); *Dark v. Georgia-Pacific Corp.*, 176 Fed. Appx. 569, 572 (5th Cir. 2006); *Burrow v. Delta Container*, 887 So.2d 599, 603 (La. App. 5 Cir. 2004); *Goodin v. Columbia Gas of Ohio, Inc.*, 750 N.E.2d 1122, 1133 (Ohio Ct. App. 2000); *Foust v. Magnum Rest., Inc.*, 646 N.E.2d 1150, 1153 (Ohio Ct. App. 1994).

**Argument in Support**

Plaintiff has indicated that evidence about prior incidents is crucial to her case.  (*See*, *e.g.*, Apr. 2, 2010 Pre-Trial Hearing at 22:23-23:4 (where Plaintiff's attorney referred to a 2001 memo about "employees climbing on machines" as "one of the main pieces of evidence.").)  Plaintiff also intends to rely heavily on evidence concerning the actions of employees at the Tulsa location during the two weeks prior to Mr. Torres's death.  If Plaintiff intends to rely on any alleged prior incidents the jury should be instructed on two issues.  First, that prior incidents are only relevant if they are "substantially similar" to the incident that resulted in Mr. Torres's death, and are only relevant to Cintas's "substantial certainty" if they put Cintas on notice of the "precise risk" or "exact danger" that caused Mr. Torres to die.  Second, if the prior incidents demonstrate that employees were engaged in the same conduct as Mr. Torres but did not result in

injury then, far from supporting Plaintiff's claim, they actually support an inference that Cintas could not possibly have been substantially certain that Mr. Torres would die.

Generally, evidence about prior accidents in a negligence case is *admissible* if they are "substantially similar" – and in that context "[s]ubstantially similar means that the accidents must have occurred under similar circumstances or share the same cause." *Rye v. Black & Decker, Inc.*, 889 F.2d 100, 102 (6th Cir. 1989).   This it not the standard that should be applied in determining whether a prior incident should have caused Cintas to be "substantially certain" that Mr. Torres would die.   This Court ruled that it would permit Plaintiff "to introduce evidence of injuries caused by the precise risk at issue in this case only."  (Dkt. 403 at 9.)   A prior incident could help establish that Cintas was "substantially certain" that Mr. Torres would die only if it put Cintas on notice of that "precise risk" or the "exact danger" that Mr. Torres was exposed to. Although no Oklahoma court was ruled on this issue, this is the standard other courts applying the "substantial certainty" test have applied in considering the impact of prior incidents on a plaintiff's claim.   *See*, *e.g.*, *Smith*, 172 Fed. Appx. at 670 (finding that a prior incident that did not put defendant on notice of the "exact danger" that led to plaintiff's injury could not support a claim that defendant was substantially certain that plaintiff's injury would occur) (*citing Sanek v. Duracote Corp.*, 43 Ohio St.3d 169, 549 N.E.2d 1114, 1117 (1989)).   *See also Kuhnert*, 5 F.3d at 305 (similar prior incidents not enough to render defendant "substantially certain" of injury involving a washer backsplashing and burning plaintiff where "[o]nly when not properly operated did the washers backsplash hot water and then only occasionally did the hot water burn anyone"); *Ulrick v. Kunz*, 594 F.Supp.2d 847, 854 (N.D.Ohio 2009) (previous instances of assault by supervisor insufficient to put employer on notice that assault of plaintiff was "substantially certain" to occur).

Here, the evidence will show that Mr. Torres was **not** injured simply because he climbed onto a moving conveyor.  The evidence will show that he died because he climbed onto a moving conveyor *and* jumped on clothing as it was jammed at the dryer door while the dryer was still running.  Only similar incidents, where a Cintas employee climbed onto a moving conveyor while the dryer was still running and then jumped up and down on clothing jammed at the dryer door, could be "substantially similar" to Mr. Torres's death and involve the same conduct and cause that led to his death, and therefore only evidence about those incidents should be admissible.  *Rye*, 889 F.2d at 102.[3]  Regardless of whether Plaintiff can offer evidence of other prior incidents for some other purpose, however, only those types of incidents involving jumping up and down on clothing jammed at the door of a running dryer could possibly have put Cintas on notice of the "exact danger" that Mr. Torres was exposed to such that they would support a finding that Cintas was "substantially certain" that Mr. Torres would die.  Incidents where employees simply climbed onto moving conveyors, or turned off the dryer before dislodging a jam, could not possibly support such a finding, and the jury should be told as such.

In any event, if evidence of prior incidents is introduced, and if the conduct involved in those incidents was "substantially similar" to Mr. Torres's (as it must be in order to be introduced) and that conduct did not result in injury, then this would support a finding that Cintas had no reason to believe let alone to be substantially certain that the conduct would result in injury or death.  Therefore, the second paragraph of the above instruction is simply a common-sense application of the plain language of the "substantial certainty" test.  An employer cannot be

---

[3] Cintas extensively briefed the admissibility of prior incidents *in limine* (*see* Dkt. 275, 279), and will be prepared to argue about each individual prior incident when – as the Court has indicated it will require – Plaintiff explains at a hearing outside of the presence of the jury why evidence about each prior incident should be admitted (*see* Apr. 2, 2010 Hearing Tr. at 23:5-7).  The focus of these proposed instructions is on the effect prior incidents – if any – should have on the jury's application of the *Parret* standard.  Cintas does not and cannot concede that evidence or testimony about any individual incident is admissible until Plaintiff attempts to introduce that evidence or testimony at trial.

found to be "substantially certain" that an employee's actions will lead to an injury if employees have previously engaged in those actions and no injury has occurred – even though such knowledge could be used to support a negligence claim or to determine what an employer should or should not have done.

Courts applying intentional tort standards similar to *Parret* have adopted this reasoning. *See*, *e.g.*, *Dark v. Georgia-Pacific Corp.*, 176 Fed. Appx. 569, 572 (5th Cir. 2006) ("[I]f an act has occurred numerous times and not resulted in injury, then an injury is not substantially certain to occur."); *Burrow v. Delta Container*, 887 So.2d 599, 603 (La. App. 5th Cir. 2004) (granting defendant's motion for summary judgment where injury could not be "substantially certain" to follow where one employee had "performed the job in [the same] manner since the machine had been installed without injury, as did [Plaintiff] for several hours."); *Goodin v. Columbia Gas of Ohio, Inc.*, 750 N.E.2d 1122, 1133 (Ohio Ct. App. 2000) ("Additionally, it is undisputed that the procedure in which decedent had been engaged at the time of his death had been performed 'hundreds' of times by other employees.  We do not believe that five prior incidents of oxygen asphyxiation, none of which resulted in serious injury, raises a genuine issue of material fact as to whether appellee knew to a substantial certainty that death to decedent would occur."); *Foust v. Magnum Rest., Inc.*, 646 N.E.2d 1150, 1153 (Ohio Ct. App. 1994) (finding that evidence "strongly suggested" that injury was not substantially certain to result from manner in which job was performed and affirming summary judgment for employer where evidence showed that "the procedure had been performed 'thousands of times' without a prior accident" and that plaintiff "himself had performed the procedure over one hundred times during the course of a year without incident"). This Court should do the same and – if evidence and testimony about prior

incidents is admitted – it should instruct the jury about the proper inferences that can be drawn from that evidence and testimony.

**Defendant's Proposed Jury Instruction No. 8**

## SUBSTANTIAL CERTAINTY – TRAINING OR ALTERNATE MEANS

If you determine that the evidence shows that Cintas trained Mr. Torres not to engage in the conduct that led to his death, or provided an alternate and safer means to complete the task he was attempting to complete when he died, Cintas cannot be said to have been "substantially certain" that Mr. Torres would die, and you must find for Cintas.

There has been evidence that Cintas Tulsa trained its wash alley operators to turn off the conveyor and the dryer prior to getting on the conveyor to clear a jam.  If you find this training occurred, and that if Mr. Torres had followed this training he would not have died, you must find in favor of Cintas.

*Source*: *Eilerman v. Cargill, Inc.*, 195 Fed. Appx. 314, 319 (6th Cir. 2006); *Robinson v. Icarus Indus. Constr. & Painting Co.*, 762 N.E.2d 463, 467 (Ohio Ct. App. 2001); *Goodin v. Columbia Gas of Ohio, Inc.*, 750 N.E.2d 1122, 1133 (Ohio Ct. App. 2000); *Allstates Fireproofing, Inc. v. Garcial*, 876 So.2d 1222, 1226 (Fl. Ct. App. 2004).

**Argument in Support**

It does not appear that a court applying *Parret* has ruled on the effect of the defendant

providing safety training or alternative means of completing a task on an intentional tort claim.

Other courts applying the "substantial certainty" standard, however, have routinely "held that if

an employee is injured as a result of his knowing failure to follow a safety procedure that would

have averted the injury, the employer cannot be said to have the requisite intent… ."  *Eilerman v.*

*Cargill, Inc.*, 195 Fed. Appx. 314, 319 (6th Cir. 2006).  *See also Robinson v. Icarus Indus.*

*Constr. & Painting Co.*, 762 N.E.2d 463, 467 (Ohio Ct. App. 2001) ("An employer simply

cannot be held to know that a dangerous condition exists and that harm is substantially certain to

occur when he has taken measures that would have prevented the injury altogether had they been

followed."); *Goodin*, 750 N.E.2d at 1133 (plaintiff could not prove that employer knew that

injury was substantial certainty because employer had safety measures in place that provided

employee with safe, "alternate means of proceeding"); *Allstates Fireproofing, Inc. v. Garcial*,

876 So.2d 1222, 1226 (Fl. Ct. App. 2004) (summary judgment should have been entered for an

employer that provided detailed safety training and therefore could not have been substantially certain that an injury would occur).  If the jury finds that Cintas trained Mr. Torres, and that if he had followed that training he would not have died, then the jury cannot find that Cintas was substantially certain that Mr. Torres would be injured or die.  To avoid any possible confusion, the jury should be instructed as such.

**Defendant's Proposed Jury Instruction No. 9**

## KNOWLEDGE OF DANGEROUS CONDUCT MAY BE IMPUTED TO CORPORATION ONLY THROUGH MANAGEMENT OR SUPERVISORS

Throughout these instructions, I have referred to an act by Cintas, or acts by Cintas, or the "substantial certainty" or knowledge of Cintas.  Cintas is a corporation.  Your consideration of how Cintas acted or what it intended or knew must focus on the actions, knowledge and intent of its managers and supervisors, as opposed to non-managerial or non-supervisory employees, like washroom operators.

To find that Cintas intentionally acted in a way that caused Mr. Torres's death, you must find that the intentional act was performed by a manager or supervisor.  You may not base a finding that Cintas intentionally acted in a way that caused Mr. Torres's death on evidence that non-managerial or non-supervisory employees, like washroom operators, intentionally performed the act that caused Mr. Torres's death.

Likewise, to find that Cintas intended for its employees to dislodge clothing jams by jumping on the clothing as it was jammed at the dryer door while the dryer was running, you must find that a manager or supervisor intended this conduct to occur.  You may not base a finding that Cintas intended this conduct on evidence that non-managerial or non-supervisory employees, like washroom operators, intended it to occur.

Finally, to find that Cintas knew that this conduct was substantially certain to result in death, you must find that a manager or supervisor possessed such knowledge.  You may not base a finding that Cintas knew this conduct was substantially certain to result in death on evidence that non-managerial or non-supervisory employees, like washroom operators, knew that such conduct was occurring and were substantially certain that it would result in death.

*Source*: *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1500 n.11 (10th Cir. 1994); *Weimerskirch v. Coakley*, No. 07AP-952, 2008 WL 928396, ¶ 10 (Ohio Ct. App. Apr. 8, 2008).

## Argument in Support

Plaintiff may attempt to introduce evidence and testimony concerning the knowledge and

actions of non-management and non-supervisory employees, and may argue that this knowledge,

intent and substantial certainty should be imputed to Cintas.  This argument lacks support in the

law.  The Tenth Circuit, applying Oklahoma law, has found that "in . . . cases of direct corporate

liability, knowledge may be imputed to a corporate employer from information obtained by its

<u>supervisory</u> employees and agents—including *but not limited to* officers and directors—in the

course and scope of their employment." *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1500 n.11 (10th Cir. 1994) (*citing, e.g., Tidal Oil Co. v. Forcum*, 116 P.2d 572, 575 (Okla. 1941)) (underlined emphasis added; italicized emphasis in original).  Other courts are in accord. *Weimerskirch v. Coakley*, No. 07AP-952, 2008 WL 928396, ¶ 10 (Ohio Ct. App. Apr. 8, 2008) ("Knowledge of a dangerous condition or risk can only be imputed to an employer through senior management." (*citing Witzgall v. Fenton Rigging Co.*, No. C870365, 1988 WL 68683 (Ohio Ct. App. June 29, 1988))).  Cintas proposes the above instruction so that the jury will properly understand which employees had to act, or to be substantially certain, in order for Plaintiff to prevail on her claims.

**Defendant's Proposed Jury Instruction No. 10**

**"COLLECTIVE INTENT" OR "COLLECTIVE KNOWLEDGE" INSUFFICIENT TO PROVE THAT CORPORATION COMMITTED INTENTIONAL TORT**

For Mrs. Torres to prove that Cintas intended the act that caused Mr. Torres's death with knowledge that his death was substantially certain to occur, she must prove by the greater weight of the evidence that a specific manager or supervisor, as opposed to Cintas generally as a corporation, both intended the act that caused Mr. Torres's death and was substantially certain that Mr. Torres's death would result from that intentional act.  Intent and knowledge of substantial certainty of injury must match up in a single manager or supervisor.

If you find only that a specific manager or supervisor intended the act that caused Mr. Torres's death, but that this manager or supervisor was not substantially certain that the act would result in Mr. Torres's death, then you cannot find that Cintas as a corporation intended an act that it was substantially certain would cause Mr. Torres's death, and you must find for Cintas. If you find only that a specific manager or supervisor knew that death was substantially certain to result from Mr. Torres's conduct, but that this manager or supervisor did not intend for Mr. Torres to engage in the conduct that led to his death, then you cannot find that Cintas as a corporation intended an act that it was substantially certain would cause Mr. Torres's death, and you must find for Cintas.

If Mrs. Torres cannot prove by a greater weight of the evidence that a specific manager or supervisor both intended the conduct that led to Mr. Torres's death and was substantially certain that the intended conduct would result in his death, then you cannot find that Cintas intended the act that caused Mr. Torres's death with substantial certainty that his death would occur, and you must find for Cintas.

*Source*:  *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1960); *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (2d Cir. 2004); *Gutter v. E.I. DuPont de Nemours*, 124 F. Supp. 2d 1291, 1311 (S.D. Fla. 2000); *First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988), *aff'd*, 869 F.2d 175 (2d Cir. 1989); *Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464, 477-80 (Mich. 1993) (majority opinion of Justices Brickley, Griffin, Riley, and Boyle).

**Argument in Support**

Because Plaintiff proposes introducing evidence concerning the alleged knowledge of dozens of Cintas employees at the Tulsa location, and many more employees at other locations, the jury may be led to believe that they can piece together various bits of knowledge of different employees, and determine as a result of this "composite" knowledge that Cintas acted intentionally or was substantially certain that Mr. Torres would die.  In cases like this one

involving allegations that a corporation committed an intentional tort, however, courts have rejected the suggestion that the corporation's knowledge or intent can be established through evidence of the collective knowledge or intent of the corporation's employees.  As the Tenth Circuit has held, "[W]hile in some cases, a corporation may be held constructively responsible for the composite knowledge of all of its agents, whether acting in unison or not, we are unwilling to apply the rule to fix liability where, as here, intent is an essential ingredient of tort liability as for deceit."  *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1960) (internal citations omitted).

Applying this same concept, the Second Circuit has held, "For purposes of determining whether a statement made by the corporation was made with the requisite Rule 10(b) scienter[,] we believe it appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment."  *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (2d Cir. 2004).   The Second Circuit further observed, "This is consistent with the general common law rule that where, as in fraud, an essentially subjective state of mind is an element of a cause of action also involving some sort of conduct, such as a misrepresentation, the required state of mind must actually exist in the individual making (or being a cause of the making of) the misrepresentation, and may not simply be imputed to that individual on general principles of agency."  *Id.* (*citing*, *e.g.*, *Woodmont*, 274 F.2d at 137); *see also Gutter v. E.I. DuPont de Nemours*, 124 F. Supp. 2d 1291, 1311 (S.D. Fla. 2000) ("The knowledge necessary to form the requisite fraudulent intent must be possessed by at least one agent and cannot be inferred and

imputed to a corporation based on disconnected facts known by different agents." (*citing, e.g.*, *Woodmont*, 274 F.2d at 137)); *First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988), *aff'd*, 869 F.2d 175 (2d Cir. 1989) ("While it is not disputed that a corporation may be charged with the collective knowledge of its employees, it does not follow that the corporation may be deemed to have a culpable state of mind when that state of mind is possessed by no single employee.  A corporation can be held to have a particular state of mind only when that state of mind is possessed by a single individual.").

The above principles have been applied specifically to claims against corporate employers for intentional torts.  *Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464, 477-80 (Mich. 1993) (four of seven justices holding that employee could not prove claims for false arrest, intentional infliction of emotional distress, and other torts by aggregating knowledge or intent of corporation's employees; "We hold that intent to commit tortious acts cannot be imputed to a corporation on the basis of disconnected facts possessed by various employees or agents of that corporation, where there is no evidence that any employee possessed the requisite state of mind.").  The above proposed instruction will assure that the jury properly focuses on the intent of specific Cintas managers or supervisors, rather than attempting to piece together the required intent and substantial certainty from various and unconnected Cintas employees.

**Defendant's Proposed Jury Instruction No. 11**

**"COLLECTIVE INTENT" OR "COLLECTIVE KNOWLEDGE" INSUFFICIENT TO PROVE THAT CORPORATION KNEW INJURY WAS SUBSTANTIALLY CERTAIN TO RESULT FROM CONDUCT**

To prove Cintas was substantially certain that Mr. Torres would die, Mrs. Torres must prove by a greater weight of the evidence that a specific manager or supervisor both knew that Mr. Torres was jumping on clothing jams at the dryer's opening while the dryer was running, and knew that this conduct was substantially certain to result in death. Knowledge of the conduct and knowledge of substantial certainty of injury must match up in a single manager or supervisor.

If you find that a specific manager or supervisor knew that Mr. Torres was jumping on a clothing jam at the dryer's opening while it was running, but that this manager or supervisor did not know that this conduct was substantially certain to result in death, then you cannot find that this manager or supervisor was substantially certain that Mr. Torres would die. If you find that a specific manager or supervisor knew that an employee was substantially certain to die if he or she were to jump on a clothing jam at the dryer's opening while it was running, but that this manager or supervisor did not know that Mr. Torres was engaged in that conduct, then you cannot find that this manager or supervisor was substantially certain that Mr. Torres would die.

If Mrs. Torres cannot prove by a greater weight of the evidence that a specific manager or supervisor knew that Mr. Torres was jumping on clothing jammed at the dryer's opening while it was running and knew that this conduct was substantially certain to result in death, then she has not proven that Cintas was substantially certain that Mr. Torres would die, and you must find for Cintas.

*Source*: *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1960) (*see also* sources for Defendant's Proposed Jury Instruction No. 10).

**Argument in Support**

*See* Argument in Support of Defendant's Proposed Jury Instruction No. 10.

**Defendant's Proposed Jury Instruction No. 12**

**<u>EMPLOYER MUST KNOW OF CONDUCT BEFORE EMPLOYER CAN INTEND IT</u>**

To find that a specific manager or supervisor intended for employees to dislodge clothing jams by jumping on the clothing as it was jammed at the dryer door while the dryer was running, you must first find that the specific manager or supervisor knew this conduct was occurring, because a person cannot intend conduct that he or she does not know is happening. Consequently, if you do not find that a specific manager or supervisor knew that Mr. Torres was attempting to dislodge laundry jams by jumping on the clothing as it was jammed at the dryer door while the dryer was running, you may not find that Cintas intended that conduct to occur, and you must find for Cintas.

*Source*: *Cf. Maddox v. L.O. Warner, Inc.*, No. 15468, 1996 WL 50152, at *2 (Ohio Ct. App. Feb. 7, 1996) (finding that plaintiff failed to show that employer was substantially certain that injury would result from employee's unsafe behavior because, *inter alia*, employer did not know of behavior).

**Defendant's Proposed Jury Instruction No. 13**

## <u>DAMAGES</u>

If, and only if, you find in accordance with my previous instructions that Cintas acted intentionally, knew that its intentional act was substantially certain to cause Mr. Torres's death, and that Cintas's intentional act was in fact the direct cause of Mr. Torres's death, then you should find for Mrs. Torres on liability and should next consider the issue of the damages that she should recover.

You should not consider the fact that I am instructing you on damages as indicating any view of mine as to whether Mrs. Torres or Cintas is entitled to receive your verdict in this case. These instructions are only given for your guidance, in the event you should find in favor of Mrs. Torres.  If you find for Cintas, there is no need for you to consider the issue of damages.

*Source*: Cintas proposes these preliminary instructions to avoid the risk of confusion and an inconsistent verdict, where the jury would find for Cintas yet provide a damages figure.

**Defendant's Proposed Jury Instruction No. 14**

**DAMAGES FOR WRONGFUL DEATH OF AN ADULT**

Mrs. Torres sues to recover damages for the death of Mr. Torres.

If you decide for Mrs. Torres on the question of liability, in determining the amount of damages she is entitled to recover, you may consider the following items:

1. The loss of financial support of contributions of money to the wife and children of Mr. Torres;

2. The grief of the surviving wife;

3. The loss of the society, services, companionship, and marriage relationship of the wife;

4. The grief of the children of Mr. Torres;

5. The loss of companionship and parental care, training, guidance, or education that would have been forthcoming from Mr. Torres to the children, and the loss of companionship of Mr. Torres by the children;

You must fix the amount of money which will reasonably and fairly compensate for those above-named elements of damage, which you find were directly caused by an intentional act of Cintas.

*Source*: O.S. § 8.1.  This instruction has been modified to remove references to pain and suffering (as Plaintiff has yet to produce any evidence that would indicate Mr. Torres endured conscious pain and suffering before he died); and to remove any references to damages that involve Mr. Torres's parents and medical and burial expenses, as Plaintiff did not seek those damages in her complaint and/or Cintas has already paid those expenses.

**Defendant's Proposed Jury Instruction No. 15**

**PAIN AND SUFFERING**

Mrs. Torres did not produce any evidence that Mr. Torres endured conscious pain and suffering before he died.  You are not permitted to speculate that Mr. Torres endured conscious pain and suffering, and you cannot consider pain and suffering in awarding damages.

*Source*:  *Lee v. Swyden*, 319 P.2d 1009, 1014 (Okla. 1957); *Fanning v. Sutton Motor Lines, Inc.*, 2010 WL 560344 at *3 (D. Kan. Feb. 26, 2010)

**Argument in Support**

Plaintiffs have not produced any fact witnesses who observed Mr. Torres at the time of or during his accident.  Nor have they identified or designated any expert to opine on the issue of whether Mr. Torres had conscious pain before he died.  Plaintiff cannot recover damages for pain and suffering without producing evidence that Mr. Torres actually suffered pain as a result of the accident, and in the absence of such testimony, or expert testimony, there is no basis for a jury to award damages for pain and suffering.  *Fanning v. Sutton Motor Lines, Inc.*, 2010 WL 560344 at *3 (D. Kan. Feb. 26, 2010) (plaintiffs could not establish pain and suffering without eyewitness testimony of accident based on "mere possibility that the decedent's heart continued to function for a brief period of time [after the accident]… .").  *See also Lee v. Swyden*, 319 P.2d 1009, 1014 (Okla. 1957) (mere statement by a witness that a decedent was in pain is not enough to establish pain and suffering).  This Court has already held that Plaintiff and her witnesses "are prohibited from speculating about pain and suffering."  (Dkt. 403 at 4-5.)  The jury also cannot engage in such speculation, and should be instructed that they may not base their damage award on any improper speculation about pain and suffering endured by Mr. Torres.

**Defendant's Proposed Jury Instruction No. 16**

## PLAINTIFF IS ENTITLED TO ONLY ONE RECOVERY – WORKERS' COMPENSATION PAYMENTS – PAYMENTS ALREADY RECEIVED

A plaintiff may recover only once for the same injury.  In this case, Mrs. Torres and her children have received Workers' Compensation payments from Cintas in the amount of $_____.  If you decide to award Mrs. Torres damages on her intentional-tort claim against Cintas, you must deduct this amount from your award.

*Source*: *Qualls v. United States Elevator Corp.*, 863 P.2d 457, 463 (Okla. 1993) (double recovery not allowed); *Handy v. City of Lawton*, 835 P.2d 870, 874-75 (Okla. 1992) (monies paid from fund employer established to protect itself from liability may be deducted from judgment obtained against employer); *Coble v. Shepherd*, 190 P.3d 1202, 1206 (Okla. Ct. App. 2008) (double recovery not allowed); *N.C. Corff P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Ct. App. 1996) (same).

**Defendant's Proposed Jury Instruction No. 17**

**<u>PLAINTIFF IS ENTITLED TO ONLY ONE RECOVERY – WORKERS'
COMPENSATION PAYMENTS – FUTURE PAYMENTS TO SURVIVING SPOUSE –
LIFE EXPECTANCY TABLES</u>**

As a surviving spouse, Mrs. Torres is also entitled to receive Workers' Compensation payments from Cintas for the rest of her life.  According to life expectancy tables [(admitted in evidence)/(it is agreed that)] the life expectancy of a female person of the age of 46 years is 36.1 years.  The parties have relied on this figure in calculating the amount of Mrs. Torres's future Workers' Compensation payments.  This life-expectancy figure is not conclusive.  It is the average life expectancy of persons who have reached that age.  This figure may be considered by you in connection with other evidence relating to the probable life expectancy of Mrs. Torres, including evidence of her occupation, health, habits and other activities.

*Source*: O.S. § 5.12.

**Defendant's Proposed Jury Instruction No. 18**

**PLAINTIFF IS ENTITLED TO ONLY ONE RECOVERY – WORKERS' COMPENSATION PAYMENTS – FUTURE PAYMENTS TO SURVIVING SPOUSE - REMARRIAGE**

As mentioned, Mrs. Torres, as a surviving spouse, is entitled to receive Workers' Compensation payments from Cintas in the future.  This right would terminate, however, if Mrs. Torres were to get remarried.  You must decide whether Ms. Torres has plans to remarry and, if so, the date on which she is likely to remarry.

Cintas asserts that it is unlikely Mrs. Torres will ever remarry and that the present value of her future Workers' Compensation payments is $_____.  Mrs. Torres claims her future Workers' Compensation payments are currently worth $_____.  You must decide which of these amounts is correct.  Then, if you decide to award damages to Mrs. Torres on her intentional-tort claim against Cintas, you must deduct that amount from the award.

*Source*: Okla. Stat. tit. 85, § 22(8)(a)(1), (3) (2010).   Title, 85, section 22 of the Oklahoma Statutes provides in pertinent part:

8. Income benefits for death.  If the injury or occupational disease causes death, income benefits shall be payable in the amount and for the benefit of the persons following, subject to the maximum limits specified hereafter:

(a) Benefit amounts for particular classes of dependants.

(1) If there is a surviving spouse, to such surviving spouse seventy percent (70%) of the average weekly wages the deceased was earning.  In no event shall this spousal income benefit be diminished.

\*        \*        \*

(3) In addition to the benefits theretofore paid or due, two (2) years' indemnity benefit in one lump sum shall be payable to a surviving spouse upon remarriage.

Okla. Stat. tit. 85, § 22(8)(a)(1)-(3) (2010).

**Defendant's Proposed Jury Instruction No. 19**

**PLAINTIFF IS ENTITLED TO ONLY ONE RECOVERY – WORKERS'
COMPENSATION PAYMENTS – FUTURE PAYMENTS TO DEPENDENT CHILDREN**

Mrs. Torres' dependent children are also entitled to Workers' Compensation benefits in the future for Mr. Torres' death.  The present value of these benefits is $_____.  If you decide to award damages to Mrs. Torres on her intentional-tort claim against Cintas, you must deduct that amount from the award.

*Source*: Okla. Stat. tit. 85, § 22(8)(a)(2) (2010).  Title, 85, section 22 of the Oklahoma Statutes provides in pertinent part:

8. Income benefits for death.  If the injury or occupational disease causes death, income benefits shall be payable in the amount and for the benefit of the persons following, subject to the maximum limits specified hereafter:

(a) Benefit amounts for particular classes of dependants.

\*        \*        \*

(2) If there is a child or children, to such child or children fifteen percent (15%) of the average weekly wages the deceased was earning for each child.  Where there are more than two such children, the income benefits payable for the benefit of all children shall be divided among all children, to share and share alike, subject to the provisions of subparagraphs (c) and (d) of this paragraph.

Okla. Stat. tit. 85, § 22(8)(a)(1)-(3) (2010).

## PROPOSED SPECIAL INTERROGATORIES

1.      Do you find by the greater weight of the evidence that Cintas intended the act that was the direct cause of Mr. Torres's death?

        __ **Yes**          __ **No**

If you answer this Special Interrogatory "No," then you must find for Cintas.

2.      If your answer to Special Interrogatory No. 1 is "Yes," who was the Cintas manager(s) or supervisor(s) that intentionally acted and caused Mr. Torres's death?

_____

3.      If the answer to Special Interrogatory No. 1 is "Yes," then do you find by the greater of weight of the evidence that Cintas was substantially certain that the act it intended would result in Mr. Torres's death?

        __ **Yes**          __ **No**

If you answer this Special Interrogatory "No," then you must find for Cintas.

4.      If your answer to Special Interrogatory No. 3 is "Yes," who was the Cintas manager(s) or supervisor(s) that intentionally committed an act that he or she was substantially certain would result in Mr. Torres's death?

_____

5.      If your answer to Specially Interrogatories No. 1 is "Yes," do you find that the intentional act that Cintas committed was the direct cause of Mr. Torres's death?

        __ **Yes**          __ **No**

If you answer this Special Interrogatory "No," then you must find for Cintas.

6.      If your answer to Special Interrogatory No. 5 is "Yes," who was the Cintas manager(s) or supervisor(s) that committed an intentional act that was the direct cause of Mr. Torres's death?

_____

7.      Do you find that Cintas intended the conduct that was the direct cause of Mr. Torres's death?

**__ Yes          __ No**

If you answer this Special Interrogatory "No," then you must find for Cintas.

8.      If your answer to Special Interrogatory No. 7 is "Yes," who was the Cintas manager(s) or supervisor(s) that intended the conduct that was the direct cause of Mr. Torres's death?

_____

9.      If you find for Mrs. Torres, what is she entitled to recover?

$_____


## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2010, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system and will serve counsel of record via electronic mail.

s/ Gregory M. Utter_____
Gregory M. Utter