# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMALIA DIAZ TORRES, surviving spouse of ELEAZAR TORRES GOMEZ | ) ) ) | Case No. 4:08-cv-00185-CVE-TLW |
| Plaintiff, | ) ) | |
| -v- | ) ) | **DEFENDANT CINTAS CORPORATION'S** |
| CINTAS CORPORATION, et al. | ) ) | **TRIAL BRIEF** |
| Defendants. | ) ) ) | |

## I.     INTRODUCTION

Defendant Cintas Corporation ("Cintas") submits the following brief in advance of the

scheduled trial on the claims of Plaintiff Amalia Diaz Torres ("Plaintiff") in the above-captioned

action in order to address the following crucial issues:

- To prevail on her intentional tort claim, Plaintiff must demonstrate that Cintas intentionally acted; that Cintas was substantially certain that act would result in Mr. Torres's death; and that Cintas's intentional act was in fact the direct cause of Mr. Torres's death.  As the Oklahoma Supreme Court has held and other courts have confirmed, it is not enough for Plaintiff to prove that Cintas was substantially certain that an injury could occur, but did nothing to stop it.  Plaintiff must prove that an affirmative, intentional act by Cintas caused Mr. Torres's death.  *Price v. Howard*, 2010 WL 925175 at *4 (Okla. Mar. 16, 2010); *Parret v. Unicco Serv. Co.*, 127 P.3d 572 (Okla. 2005).

- To prove that Cintas was "substantially certain" that its intentional act would cause Mr. Torres's death, Plaintiff must prove that Cintas was substantially certain that Mr. Torres, specifically, would die.  It is not enough for Plaintiff to prove that an injury was likely to occur, or even that an injury to an unspecified employee was certain to eventually occur.  *McIntyre v. K-Mart Corp.*, 794 F.2d 1023, 1025 (5th Cir. 1986).

- Plaintiff should not be able to offer evidence of prior incidents because they are irrelevant to the issue of whether Cintas intentionally acted.  If she can offer any evidence on prior incidents, they should be those that concerned Mr. Torres specifically.  If Plaintiff is nevertheless permitted to offer evidence of additional prior incidents at Tulsa (including the video evidence she will likely offer) or at other Cintas locations, she must do so only to show that Cintas knew employees were engaged in the same conduct or were exposed

to the precise risk or exact danger that led to Mr. Torres's death.  Plaintiff cannot rely on instances where employees only climbed onto a moving conveyor to clear a clothing jam; if she can introduce any evidence about prior incidents at all, it can only be those where an employee, like Mr. Torres, jumped on clothing at the mouth of a dryer while it was still running.  *Smith v. General Motors Corp.*, 172 Fed. Appx. 661, 670 (6th Cir. 2006).

- Moreover, if evidence is admitted at trial that reveals that Cintas was aware that its employees were engaged in the same conduct that led to Mr. Torres's death, but also knew that conduct did not generally result in injuries, then Cintas could not have been "substantially certain" that conduct would result in injury or death.  *Dark v. Georgia-Pacific Corp.*, 176 Fed. Appx. 569, 572 (5th Cir. 2006) ("[I]f an act has occurred numerous times and not resulted in injury, then an injury is not substantially certain to occur.").

- As this Court determined in its summary judgment ruling, Plaintiff has not yet produced *any* evidence demonstrating that Cintas did not, starting in 2005, train its Tulsa employees to avoid climbing on moving conveyors to dislodge jams.  Until Plaintiff produces such evidence, she should be barred from introducing any testimony or evidence concerning incidents that took place prior to that training.

- To prove that Cintas intentionally acted in a way that caused Mr. Torres's death, and to find that Cintas had knowledge or was substantially certain that Mr. Torres would die, Plaintiff must show that a Cintas manager or supervisor (as opposed to a non-supervisory employee) intended the act, had the knowledge, and was substantially certain that Mr. Torres would die.  *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1500 n.11 (10th Cir. 1994).

- Plaintiff may not aggregate the acts, intent, or knowledge of different managers or supervisors to prove her case.  To prove intent, Plaintiff must establish that one manager or supervisor intended an act and was substantially certain that act would cause Mr. Torres to die.  To prove substantial certainty, Plaintiff must demonstrate that one manager or supervisor was aware that Mr. Torres was engaged in certain conduct and that the same manager or supervisor was also aware that conduct was substantially certain to result in Mr. Torres's death.  *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1960).

- If Cintas trained Mr. Torres not to engage in the conduct that led to his death – or provided him with an alternative, safe means of completing the task he was trying to complete when he died – then Cintas could not have been substantially certain that Mr. Torres would die.  *Eilerman v. Cargill, Inc.*, 195 Fed. Appx. 314, 319 (6th Cir. 2006).

- Plaintiff still has not pointed to evidence that Mr. Torres endured conscious pain and suffering before he died, and unless she is able to do so the jury should be instructed not to base their verdict or any damages figure on speculation about pain and suffering.  *Lee v. Swyden*, 319 P.2d 1009, 1014 (Okla. 1957).  Additionally, the Court's order on Cintas's Motions *In Limine* directed that no speculation regarding conscious pain and

suffering would be permitted.  As a result, no witness should be permitted to testify about their thoughts on any conscious pain and suffering Mr. Torres may have endured.

For all of these reasons, and the reasons more fully stated below, Cintas respectfully requests that the court adopt its proposed jury instructions, and grant the other relief requested in this Trial Brief.[1]

## II.    LAW AND ARGUMENT

### A.    <u>Plaintiff Must Prove an Intentional Act and Causation</u>

Given Plaintiff's focus on previous incidents, whether Cintas was aware of those incidents, and whether Cintas was aware that employees were engaged in certain activities, it appears that Plaintiff may be prepared to argue that simply proving some knowledge and passive conduct on the part of Cintas is enough to establish an intentional tort.  It is not.  Plaintiff must prove that it was an intentional act on the part of Cintas that was the direct cause of Mr. Torres's death, in addition to proving that Cintas was substantially certain that its intentional act would result in Mr. Torres's death.

> 1.    **Plaintiff must prove that Cintas intentionally acted and was substantially certain that act would result in Mr. Torres's death; it is not enough to prove that Cintas failed to act.**

To prove the "intentional conduct" prong of an intentional tort claim under *Parret*, a plaintiff must do more than prove that the defendant was aware of a hazard but did nothing to prevent an injury.  She must prove that the defendant affirmatively *acted* with the knowledge that its conduct was "substantially certain" to injure plaintiff.  The *Parret* court explicitly required an affirmative act to create liability, holding that "for an employer's conduct to amount to an intentional tort, the employer must have … ***acted*** with the knowledge that such injury was

---

[1] Cintas has also included many of the arguments in this brief in the document that contains its proposed jury instructions, so that in reviewing the jury instructions the Court will not have to refer to a separate brief.

substantially certain to result from the employer's conduct." *Parret*, 127 P.3d at 579 (emphasis added). The *Parret* court set forth this standard just one sentence after it indicated that "the [substantial certainty] standard must be clearly articulated and its parameters defined," *id.*, therefore clearly stating that an employer must have intended an act – not an omission – that it was substantially certain would result in injury in order to have committed an intentional tort. In this case, the jury must find that Cintas did more than simply allow Mr. Torres to engage in an activity that was likely or even substantially certain to lead to an injury; Plaintiff must demonstrate that Cintas acted to cause Mr. Torres's death by affirmatively ordering him to engage in work that it knew was substantially certain to result in death.

Although the *Parret* Court suggested, in dicta, that an employer who "failed" to act could still be substantially certain that an injury would occur, it did so only in the context of quoting Professor Prosser's treatise on intent. *Id.* The Court did not explicitly state that pure omissions could rise to the level of an intentional tort; to the contrary, it explained that its decision was "not intended to expand the narrow intentional tort exception to workers' compensation exclusivity." *Id.* There is not a recorded, pre-*Parret* Oklahoma case holding that an omission can be an employer intentional tort, such that the exception to workers' compensation exclusivity could apply. Nothing in the *Parret* decision suggests that it was expanding the exception; and a holding that mere knowledge of a potentially hazardous working condition, and an alleged failure to correct that condition, was more than negligence and could rise to the level of an intentional tort would dramatically expand the exception.

The Oklahoma Supreme Court recently affirmed that liability under *Parret* requires an affirmative act: "[e]stablishing that an employer *has **acted** in a manner resulting in an employee's injuries being substantially certain* presents a formidable barrier to recovery in tort."

- 4 -

*Price*, 2010 WL 925175 at *4 (emphasis added).  The *Price* court further clarified that a plaintiff must show that an employer "desired to bring about a worker's injury or ***acted*** with the knowledge that such injury was substantially certain to result from the employer's conduct."  *Id*. This formulation of the test helps clarify the language in *Parret*.  An omission may be sufficient to establish an intentional tort, but only in those cases where the defendant <u>actually desired</u> to injure the plaintiff.  Here, only the "substantial certainty" theory of intentional liability is in play, as there is no allegation that Cintas (or any individual at Cintas) actually desired that Mr. Torres would be injured or die.  Therefore, it is not enough for Plaintiff simply to prove that Cintas knew, or was even substantially certain, that Mr. Torres would be injured or die; she also must prove that it was an intentional ***act*** on the part of Cintas that caused Mr. Torres's death.

Courts that have allowed *Parret* claims to proceed have done so only where there were allegations or evidence that an employer *affirmatively* acted.  *See McCullough v. Hackney Ladish, Inc.*, 2008 WL 240821, at *1 (W.D. Okla. Jun. 11, 2008) (denying motion to dismiss where Defendant allegedly "***directed*** [Plaintiff] to operate machinery with the knowledge that an injury was substantially certain to occur" (emphasis added)); *Keesling v. Metalspand, Inc.*, 2009 WL 1212269, at *1 (W.D. Okla. Apr. 30, 2009) (denying motion to dismiss where Defendant allegedly "elected to ***remove*** safety equipment from [a] leveling machine… ." (emphasis added)).  The *Parret* case itself involved allegations that plaintiff died while working on "hot" light fixtures, and the Plaintiff was only able to move past summary judgment because "evidence [was] submitted that [the Defendant's] supervisors not only were aware that employees worked on the emergency lighting system 'hot,' but ***directed*** them to do so."  *Parret v. Unicco Service*

*Co.*, 2006 WL 75287 at *4 (W.D. Okla. Mar. 21, 2006) (emphasis added).[2]  Plaintiff here must also point to some affirmative direction or other act by Cintas in order to prevail.

This is in accord with decisions in other jurisdictions.  In *Martinez v. Southington Metal Fabricating Co.*, 101 Conn. App. 796, 802, 924 A.2d 150 (2007), the Court applied Connecticut's "substantial certainty" standard, which was originally set forth in *Mingachos v. CBS, Inc.*, 196 Conn. 91, 491 A.2d 368 (1985) (a decision that the *Parret* Court relied on, *see* 127 P.3d at 579).  In *Martinez*, the "plaintiff argued that the combined effect of safety violations and lack of training created a situation that would allow a trier of fact to find that the defendant intentionally created a dangerous situation in which it had been substantially certain that [plaintiff's] injury would occur."  *Martinez*, 101 Conn. App. at 805.  The court rejected this argument, because "[a] wrongful failure to act to prevent injury ***is not the equivalent*** of an intent to cause injury."  *Id.* (*quoting Melanson v. West Hartford*, 61 Conn. App. 683, 689 n.6, 767 A.2d 764 (2001)) (emphasis added).  *See also Ure v. Fineline Indus., Inc.*, 2004 WL 213171, at *2 (D.Conn. Jan. 29, 2004) (also holding that failure to prevent an injury is not the equivalent of intent to cause an injury); *Sullivan v. Lake Compounce Theme Park, Inc.*, 889 A.2d 810, 814 (Conn. 2006) ("failure to take effective remedial action does not translate to an affirmative intent to create an injury causing situation").

Other courts have rejected intentional tort claims under the "substantial certainty" standard where the allegations only involve a failure to act, rather than an affirmative act.  *See*, *e.g.*, *Kuhnert v. John Morrel & Co. Meat Packing, Inc.*, 5 F.3d 303, 305 (8th Cir. 1993) (applying South Dakota's "substantial certainty" test and holding that "the fact [Defendant] knew

---

[2] These appear to be the only three recorded decisions permitting a *Parret* claim to continue past a motion to dismiss or for summary judgment.  There are no recorded decisions actually finding liability for a claim asserted under *Parret*.

that the washers had in the past backsplashed hot water and burned some workers and … failed to take any corrective measures does not indicate that [Defendant] intended to burn[] them or [Plaintiff].”); *Smith v. Gen. Motors Corp.*, 172 Fed. Appx. 661, 668 (6th Cir. 2006) (applying Ohio “substantial certainty” test and upholding district court opinion that “the defendant’s affirmative act must be more than merely passively condoning practices and procedures… .”); *Morgan v. Church’s Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (dismissing intentional tort claim because claim that plaintiff was “injured as the result of her employer’s ‘failure to provide safe working conditions is essentially a claim that [she] was injured by the employer’s negligence.’” (*quoting Boyer v. Louisville Ladder Co.*, 157 Mich.App. 716, 403 N.W.2d 210, 211 (1987))).

For all of these reasons, the jurors should be instructed that they are required to find that Cintas affirmatively ordered or directed Mr. Torres to engage in conduct that Cintas was substantially certain would result in Mr. Torres’s death before they can find for Plaintiff. *Parret*, 2006 WL 75287, at *4. (*See* Cintas Proposed Jury Instructions Nos. 3, 4.)

2.       **Plaintiff must prove that Cintas’s intentional act, rather than Mr. Torres’s own actions, was the direct cause of Mr. Torres’s death.**

The “substantial certainty” standard in *Parret* does not relieve Plaintiff of her obligation to prove that Cintas’s intentional conduct, if any, was the direct (or proximate) cause of Mr. Torres’s death. *Parret*, 127 P.3d at 574 (“the employer must have intended the act that ***caused*** the injury with knowledge that the injury was substantially certain to follow” (emphasis added)). *See also* O.S. § 6.16 (a plaintiff in a *Parret* case must prove that “Defendant's conduct ***caused*** injury to Plaintiff” (emphasis added)). If Cintas can demonstrate that the direct cause of Mr. Torres’s death was his own affirmative decision to, *inter alia*, ignore his training, climb onto a moving conveyor, and then jump up and down on top of a laundry jam with the dryer still

running, then Plaintiff cannot meet the direct cause element of her claim and she cannot prevail. *See House v. Johnson Controls, Inc.*, 248 Fed. Appx. 645, 648 (6th Cir. 2007) ("Just as intervening actions by third parties can negate proximate causation, . . . so an injury cannot be certain to occur when the individual takes affirmative, deliberate action that brings about the harm." (internal citation omitted)).   Moreover, as this Court has already correctly found, "evidence that [Mr. Torres] was subjectively aware of the risks of his conduct and his knowledge of any relevant workplace rules … may rebut the intent element of Plaintiff's *Parret* claim." (Dkt. 403 at 14.)

Once again, Plaintiff cannot rely solely on establishing knowledge, or even substantial certainty, to prevail on her intentional tort claim.  She must demonstrate that Cintas *acted* and that Cintas's act was the direct cause of Mr. Torres's death.  The jury should be instructed accordingly.  (*See*, *e.g.*, Cintas Proposed Jury Instructions Nos. 3, 5.)

### B.  Plaintiff Must Prove That Cintas Was Substantially Certain That Mr. Torres Would Die

Plaintiff's arguments regarding Cintas's knowledge, and her focus on prior incidents, suggest she believes that she can establish the "substantial certainty" prong of her intentional tort claim by showing that Cintas was generally aware that workplace accidents in the washroom could result in an injury.  As this Court correctly noted at pre-trial, however, the "substantial certainty" standard is a "high bar."  (Tr. of Apr. 2, 2010 Hearing at 45:14-25.)  The Oklahoma Supreme Court has confirmed that it establishes a "narrow intentional tort exception" *Parret*, 127 F.3d at 579 and is a "formidable barrier to recovery in tort" *Price*, 2010 WL 925175 at *4.  As more fully explained below, only a showing that Cintas was substantially certain that the specific injury that did occur would occur – i.e., Mr. Torres's death – will suffice, and only evidence that Cintas was aware of the "exact danger" that resulted in that death is relevant to that showing.

That exacting standard also applies to the evidence of prior incidents that Plaintiff proposes to offer.

      1.    **Plaintiff must show that Cintas was substantially certain that Mr. Torres, specifically, would die, rather than simply show that an injury to an unspecified employee was likely or even certain to occur.**

Thus far in this litigation, Plaintiff has focused on arguing that Cintas was aware that employees in Tulsa were, for example, climbing on moving conveyors to dislodge clothing jams.[3]  Plaintiff has argued in opposition to summary judgment, for example, that Cintas "set the stage for the inevitable death of one or more of its employees."  (Dkt. 131 at 5.)  As the Oklahoma Supreme Court has made clear this is <u>not</u> the issue; the issue is whether Cintas was substantially certain that <u>Mr. Torres</u> – <u>specifically</u> – would die.

The *Parret* Court held that to be liable for an intentional tort, an "employer must have intended the act that caused ***the injury*** with knowledge that ***the injury*** was substantially certain to follow."  *Parret*, 127 F.3d at 579 (emphasis added).  The *Parret* court made no reference to that standard being met if a defendant knew some unspecified injury was likely or certain to occur.  The Oklahoma Supreme Court recently affirmed that "substantial certainty" refers to certainty about the injury the plaintiff actually suffered, finding that it could not "say that [an] employer's conduct amounted to an intentional tort or that the employer desired to bring about ***the worker's injury*** or acted with the knowledge that ***such injury*** was substantially certain to result from the employer's conduct."  *Price*, 2010 WL 925175, at *4.  Once again, the court did

---

[3] This claim is not supported by the evidence.  There is no testimony demonstrating that a manager or a supervisor was aware that employees were improperly resolving jams.  In fact, the irrefutable evidence is that Cintas trained its employees to turn off the conveyor and the dryer before removing jams, and as this Court has already held the evidence shows that Cintas "provided oral training and demonstration to Torres, and Torres was advised … not to climb on an energized conveyor."  (Dkt. 227 at 16.)  Cintas therefore had no reason to suspect that any of its employees were dislodging jams without turning off the conveyor, much less to be substantially certain that Torres himself was doing so.

not make any reference to the standard being met if the defendant was certain that some unspecified injury to an unidentified employee was going to occur.

Courts applying standards similar or identical to *Parret* have also required a plaintiff asserting an employer intentional tort claim to show that the employer was substantially certain that the plaintiff, specifically, would be injured.  In *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373 (5th Cir. 2006), which applied Louisiana's "substantial certainty" test, the court upheld an order dismissing a complaint even though the court had "no doubt" that plaintiff could demonstrate that defendant was aware that the latex gloves it required employees to use created an "8 to 12 percent risk that [plaintiff] and [defendant's] other healthcare employees could develop latex reactions." *Id.*  The court held this did not state an intentional tort claim – even though it appears an injury to some employee at some point was inevitable – because plaintiff did "not allege that [defendant] knowingly or purposely acted to harm ***her.***"  *Id.* (emphasis added).

Similarly, the court in *McIntyre v. K-Mart Corp.*, 794 F.2d 1023, 1025 (5th Cir. 1986), also upheld a decision denying summary judgment to a plaintiff who argued that defendant "in failing or refusing to institute an accident prevention program . . . [knew] that a certain percentage of its employees [would] be injured due to its intentional policy." *Id.*  The court noted that if all a plaintiff had to prove was that there was a statistical certainty that some employee at some time would be injured, then "any employer engaged in a business in which workers are frequently, or perhaps even occasionally, injured would be deemed by law to have intended those injuries . . . , and an employer could be held liable for an intentional tort on the basis of conduct that does not even rise to the level of ordinary negligence." *Id.*  This would be the result if this Court were to adopt Plaintiff's argument that she can prevail on her intentional

tort claim simply by establishing that some unspecified injury was inevitable, and that cannot possibly be the result intended when the Oklahoma Supreme Court adopted the narrow and "formidable" *Parret* standard.

In sum, in addition to proving that Cintas acted intentionally, Plaintiff must prove that Cintas was substantially certain that Mr. Torres – specifically – would die.  Any lesser showing, while it may be sufficient to demonstrate negligence, will not support Plaintiff's intentional tort claim, and that standard should be clearly explained to the jury.  (*See*, *e.g.*, Cintas Proposed Jury Instructions Nos. 3, 6.)

> 2. **To the extent evidence and testimony about prior incidents is relevant or admissible at all, it is only relevant or admissible if the prior incidents were substantially similar to the incident that resulted in Mr. Torres's death.**

Plaintiff has indicated that evidence about prior incidents is crucial to her claim that Cintas was substantially certain that Mr. Torres would die.  (*See*, *e.g.*, Apr. 2, 2010 Pre-Trial Hearing at 22:23-23:4 (where Plaintiff's attorney referred to a 2001 memo about "employees climbing on machines" as "one of the main pieces of evidence").)  Plaintiff has also indicated that she intends to rely heavily on evidence concerning the actions of employees at the Tulsa location during the two weeks prior to Mr. Torres's death.  This evidence, however, is simply not relevant to any probative issue in this case.  At the very least, only a fraction of the evidence that Plaintiff proposes to rely on is potentially admissible or relevant.[4]

First, Plaintiff should not be permitted to present *any* evidence to the jury concerning "prior acts" because it is irrelevant to the issue of whether Cintas *intentionally acted* to injure

---

[4] Cintas has extensively briefed the admissibility of prior incidents *in limine* (*see* Dkt. 275, 279), and will also be prepared to argue about individual prior incidents when – as the Court has indicated it will require – Plaintiff explains at a hearing outside of the presence of the jury why evidence about each prior incident should be admitted (*see* Apr. 2, 2010 Hearing Tr. at 23:5-7).  Nothing in this brief should be read as conceding that any evidence or testimony about any individual prior incident is admissible.

Mr. Torres, as Plaintiff must prove to prevail on her *Parret* claim.  *See supra.* § II(A)(1).  At the very least, Plaintiff should first have to present evidence that there was some intentional act before she can introduce evidence about prior incidents that would be irrelevant in the absence of proof that Cintas (through a manager or supervisor – *see infra* at §II(B)(6)) intentionally acted.[5]

Second, the sole issue in this case is whether Cintas intentionally acted to injure *Mr. Torres*, specifically.  Accordingly, even if Plaintiff did have evidence that Cintas intentionally acted (which she does not), all or virtually all of the "prior incidents" she has relied on in this litigation (including video evidence from the weeks before Mr. Torres's death) are irrelevant.  Only evidence that *Mr. Torres* was engaged in some conduct could possibly be relevant to Plaintiff's claim that Cintas was  substantially certain that *Mr. Torres* – specifically – would die.  None of the other evidence about past incidents is at all relevant to the issue of Cintas's knowledge or substantially certainty about the precise risk and only injury at issue in this case.

_____

[5] All evidence of prior incidents should be excluded for another reason.  As explained above, there is not a recorded *Parret* case finding liability in the absence of an affirmative and intentional act, and Plaintiff must prove an intentional act to prevail.  Plaintiff has ignored that requirement until now, and appears ready to argue that mere knowledge on the part of Cintas that there was a risk of an injury involving dryers is enough to establish liability.  Even if that was the standard, Cintas will demonstrate and Plaintiff is well aware that there is no evidence or testimony that any Cintas manager or supervisor was aware that Mr. Torres was climbing on moving conveyors, must less that he was jumping up and down on clothing jams at the mouth of a running dryer.  Faced with that critical hole in her case, Plaintiff wants to introduce prior incidents of employee conduct that involved some of the conduct that Mr. Torres engaged in.  Plaintiff will then ask the jury to infer the Cintas must have known of the conduct that that resulted in Mr. Torres's death.

If permitted to make this argument, and introduce this evidence, liability under *Parret* would be dramatically expanded.  A plaintiff would be able to establish an "intentional tort" in the absence of *any evidence* of an act and *any evidence* that the defendant was even aware of the conduct that led to plaintiff's injury (much less substantially certain that the plaintiff would in fact be injured).  This Court should not lead the jury, or *Parret* claims in general, down this path.  Even if these prior incidents were substantially similar to the conduct that led to Mr. Torres's death (and they are not), evidence and testimony about them will only lead the jury to consider what Cintas should have known, or what it must have known, not what it actually did know and was substantially certain would occur.  In other words, permitting testimony and evidence about these prior incidents will inescapably result in the jury considering, and possibly applying, a negligence standard, completely undermining the "high bar" and "formidable barrier" to tort liability that the Oklahoma Supreme Court established in *Parret*.

If, however, Plaintiff is permitted to offer evidence about prior incidents, and if she is permitted to offer evidence about prior incidents that did not involve Mr. Torres, then only evidence about a very limited subset of prior incidents are even potentially relevant to a jury's application of the *Parret* standard.   Generally, evidence about prior accidents in a negligence case is *admissible* if they are "substantially similar" – and in that context "[s]ubstantially similar means that the accidents must have occurred under similar circumstances or share the same cause." *Rye v. Black & Decker, Inc.*, 889 F.2d 100, 102 (6th Cir. 1989).  However, as this Court has already held, "[s]ubstantial similarity depends on the underlying theory of the case."  (Dkt. 403 at 8 (*citing Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.3d 1434, 1440 (10th Cir. 1998)).)  Accordingly, this Court ruled that it would permit Plaintiff "to introduce evidence of injuries caused by the precise risk at issue in this case only."  (Dkt. 403 at 9.)  Put another way, a prior incident could help establish that Cintas was "substantially certain" that Mr. Torres would die only if it put Cintas on notice of the "exact danger" that Mr. Torres was exposed to when he died.  Although no Oklahoma court has ruled on this issue, this is the standard other courts applying the "substantial certainty" test have applied in considering the impact of prior incidents on plaintiff's claim.  *See*, *e.g.*, *Smith*, 172 Fed. Appx. at 670 (finding that a prior incident that did not put defendant on notice of the exact danger that led to plaintiff's injury could not support a claim that defendant was substantially certain that plaintiff's injury would occur (*citing Sanek v. Duracote Corp.*, 43 Ohio St.3d 169, 549 N.E.2d 1114, 1117 (1989))).  *See also Kuhnert*, 5 F.3d at 305 (similar prior incidents not enough to render defendant "substantially certain" of injury involving a washer back splashing and burning plaintiff where "[o]nly when not properly operated did the washers backsplash hot water and then only occasionally did the hot water burn anyone"); *Ulrick v. Kunz*, 594 F.Supp.2d 847, 854 (N.D. Ohio 2009) (previous

instances of assault by supervisor insufficient to put employer on notice that assault of plaintiff was "substantially certain" to occur).

Here, the evidence will show that Mr. Torres was *not* injured simply because he climbed onto a moving conveyor. The evidence will show that he died because he climbed onto a moving conveyor *and* jumped on clothing as it was jammed at the dryer door while the dryer was still running. Only similar incidents – where a Cintas employee climbed onto a moving conveyor <u>while the dryer was still running</u> and then <u>jumped up and down on clothing jammed at the dryer door</u> – are "substantially similar" to Mr. Torres's death and involve the same conduct and cause that led to his death, and therefore only evidence about those incidents could have possibly put Cintas on notice of the "precise risk" that Mr. Torres faced and should be admissible. (Dkt. 403 at 9.) Only those types of incidents involving jumping up and down on clothing jammed at the door of a running dryer could possibly have put Cintas on notice of the "exact danger" that Mr. Torres was exposed to such that they would support a finding that Cintas was "substantially certain" that Mr. Torres would die. Incidents where employees simply climbed onto moving conveyors, or engaged in some other conduct, could not possibly support such a finding, and if evidence about those incidents is admitted the jury should be told as much. (*See*, *e.g.*, Cintas Proposed Jury Instructions No. 7.)

3.    **If Cintas was aware of prior incidents that were substantially similar to the incident that led to Mr. Torres's death, but the prior incidents did not result in injury or death, then Cintas could not possibly have been substantially certain that Mr. Torres's conduct would result in his death.**

If the Court admits evidence of prior incidents, it has indicated that it will do so only where Plaintiff can show that they were "substantially similar" to the incident that resulted in Mr. Torres's death. (Apr. 2, 2010 Hearing Tr. at 23:5-7.) Assuming that the Court does admit such

evidence (and Cintas reserves the right to oppose any efforts by Plaintiff to do so), then the conduct involved in those incidents will have been found to be "substantially similar" to Mr. Torres's conduct. In that case, it is important to note that if the conduct did not previously result in injury, this would support a finding that Cintas had no reason to believe, let alone to be substantially certain, that the conduct would result in injury or death. Put more simply, evidence of prior incidents that did not result in injuries completely undermines Plaintiff's position that Cintas was substantially certain that an injury would occur.

This is simply a common-sense application of the plain language of the "substantial certainty" test. An employer cannot be found to be "substantially certain" that conduct will lead to an injury if employees have previously engaged in that conduct and no injury has occurred – even though such knowledge could be used to support a negligence claim or to determine what an employer should or should not have done. Courts applying an intentional tort standard similar to *Parret* have adopted this reasoning. *See*, *e.g.*, *Dark*, 176 Fed. Appx. at 572 ("[I]f an act has occurred numerous times and not resulted in injury, then an injury is not substantially certain to occur."); *Burrow v. Delta Container*, 887 So.2d 599, 603 (La. App. 5th Cir. 2004) (granting defendant's motion for summary judgment where injury could not be "substantially certain" to follow where one employee had "performed the job in [the same] manner since the machine had been installed without injury, as did [Plaintiff] for several hours."); *Goodin v. Columbia Gas of Ohio, Inc.*, 750 N.E.2d 1122, 1133 (Ohio Ct. App. 2000) ("Additionally, it is undisputed that the procedure in which decedent had been engaged at the time of his death had been performed 'hundreds' of times by other employees. We do not believe that five prior incidents of oxygen asphyxiation, none of which resulted in serious injury, raises a genuine issue of material fact as to whether appellee knew to a substantial certainty that death to decedent would occur."); *Foust*

*v. Magnum Rest., Inc.*, 646 N.E.2d 1150, 1153 (Ohio Ct. App. 1994) (finding that evidence "strongly suggested" that injury was not substantially certain to result from manner in which job was performed and affirming summary judgment for employer where evidence showed that "the procedure had been performed 'thousands of times' without a prior accident" and that plaintiff "himself had performed the procedure over one hundred times during the course of a year without incident").

This Court should adopt the same reasoning, and Cintas has proposed an appropriate instruction to the jury so that they can fully consider the potential impact of evidence or testimony about prior incidents, if that evidence or testimony is in fact admitted.  (*See, e.g.*, Cintas Proposed Jury Instructions No. 7.)

> **4.      Evidence about pre-2005 incidents should not be considered until Plaintiff proves that the 2005 training about moving conveyors did not take place.**

Plaintiff should be prevented from introducing evidence of any prior incident involving a Cintas conveyor or clothing jam that occurred before 2005, when Cintas trained the employees at its Tulsa location not to get on moving conveyors to clear jams, unless Plaintiff can show that the 2005 training did not take place.  Plaintiff proposes to introduce evidence about prior incidents to support her allegation that Cintas was substantially certain that an employee would be injured unclogging a clothing jam on a moving conveyor.[6]  As the Court pointed out in its decision on Cintas's Motion for Summary Judgment, Plaintiff has not produced ***any*** evidence refuting that the 2005 training took place.  That training instructed employees not to get on moving conveyors, and if followed that training would have prevented Mr. Torres's injury, and therefore

---

[6] To be clear, as demonstrated elsewhere in this brief, a showing that Cintas was aware that some employees ignored their training and got on moving conveyors to clear jams would not come close to establishing that Cintas was "substantially certain" that Mr. Torres would die, let alone that Cintas intended an act that it was substantially certain would cause Mr. Torres's death and was in fact the direct cause of Mr. Torres's death.

Cintas could not have been subjectively aware or substantially certain that Mr. Torres (or any other employee) would be injured. Therefore, the only way prior incidents could possibly have any bearing on whether Cintas knew its employees were climbing on moving conveyors and clearing jams would be if they occurred after 2005, and they demonstrated that Cintas knew its employees had ignored that training.

This Court held *in limine* that "Plaintiff may be permitted to use some evidence of other similar incidents if she can show that the incidents were substantially similar to the incident causing decedent's death and state a permissible purpose for admitting the evidence at trial." As the Court knows, the evidence Plaintiff has developed concerning prior incidents at facilities other than the Tulsa location includes testimony about a 2004 incident in Painesville, Ohio, and other pre-2005 incidents. As the Court also knows, management at Cintas's Tulsa location was aware of the Painesville incident, and the irrefutable evidence and testimony developed thus far demonstrates that they responded by training their employees on how to safely clear clothing jams and by prohibiting their employees from ever mounting a moving conveyor.[7] These facts are borne out by the testimony of both the managers at the Tulsa location[8] and the employees who received the training.[9] As of summary judgment, Plaintiff had not produced *any* evidence refuting that this training took place. Accordingly, this Court correctly determined that the irrefutable evidence demonstrated that Cintas "provided oral training and demonstration to Torres, and Torres was advised … not to climb on an energized conveyor." (Dkt. 227 at 16.)

---

[7] (Dkt. 379 at Exh. E, Cocanougher Dep. at 73:12-74:18, 76:1-20, 79:9-81:16, 127:10-23; Exh. F, S. Jordan Dep. at 52:7-18, 54:16-56:21; Exh. G, Hegdale Dep. at 39:5-16, 42:5-12; Exh. H, Olguin Dep., Vol. I at 70:11-18, 71:4-22, 77:2-12; Exh. I, Harris Dep. at 113:11-115:10; Exh. J, Jackson Dep. at 115:15-116:10.)

[8] (*Id.* at Exh. E, Cocanougher Dep. at 73:12-74:18, 76:1-20, 79:9-81:16, 127:10-23; Exh. F, S. Jordan Dep. at 52:7-18, 54:16-56:21.)

[9] (*Id.* at Exh. G, Hegdale Dep. at 39:5-16, 42:5-12; Exh. H, Olguin Dep., Vol. I at 70:11-18, 71:4-22, 77:2-12; Exh. I, Harris Dep. at 113:11-115:10; Exh. J, Jackson Dep. at 115:15-116:10.)

Because Plaintiff was unable, after the close of discovery, to submit *any* evidence demonstrating that the 2005 training did not take place, it is not appropriate to permit Plaintiff at trial to introduce evidence about pre-2005 incidents *and then* prove that the 2005 training did not take place.  If the 2005 training took place, then incidents that took place prior to 2005 are irrelevant to Cintas's alleged knowledge that the training was ignored and that its employees were clearing clothing jams on moving conveyors.  Yet, if testimony about those incidents is permitted, and Plaintiff is ultimately unable to prove that the 2005 training did not take place, then the jury is likely to believe that the pre-2005 incidents are somehow relevant to Cintas's post-2005 (and post-training) knowledge and substantial certainty, and even a limiting instruction may not be sufficient to resolve that confusion.  Moreover, if Plaintiff is unable show that the 2005 training did not take place, then allowing testimony about incidents prior to 2005 will ultimately be irrelevant to Plaintiff's claims, and will prejudice Cintas's right to show that Mr. Torres's death was caused by his own failure to follow his training.

> **5.    If the evidence demonstrates that Cintas trained Mr. Torres not to engage in the conduct that resulted in his death, or provided an alternative and safe means to clear jams, then Cintas could not have been "substantially certain" that Mr. Torres would die.**

It does not appear that a court applying *Parret* has ruled on the effect of the defendant providing safety training or alternative means of completing a task on an intentional tort claim. Other courts applying the "substantial certainty" standard, however, have routinely "held that if an employee is injured as a result of his knowing failure to follow a safety procedure that would have averted the injury, the employer cannot be said to have the requisite intent… ." *Eilerman*, 195 Fed. Appx. at 319.  *See also Robinson v. Icarus Indus. Constr. & Painting Co.*, 762 N.E.2d 463, 467 (Ohio Ct. App. 2001) ("An employer simply cannot be held to know that a dangerous condition exists and that harm is substantially certain to occur when he has taken measures that

would have prevented the injury altogether had they been followed."); *Goodin*, 750 N.E.2d at 1133 (plaintiff could not prove that employer knew injury was substantial certainty because employer had safety measures in place that provided employee with safe, "alternate means of proceeding"); *Allstates Fireproofing, Inc. v. Garcial*, 876 So.2d 1222, 1226 (Fl. Ct. App. 2004) (summary judgment should have been entered for an employer that provided safety training and therefore could not have been substantially certain that an injury would occur). If the jury finds that Cintas trained Mr. Torres, and that if he had followed that training he would not have died, then the jury cannot find that Cintas was substantially certain that Mr. Torres would be injured or would die. To avoid any possible confusion, the jury should be instructed as such. (*See*, *e.g.*, Cintas Proposed Jury Instructions No. 8.)

> **6. To satisfy the "knowledge" requirement of *Parret*, Plaintiff must prove that a single Cintas manager or supervisor subjectively knew that Mr. Torres was substantially certain to die by jumping on clothing jammed at a dryer's mouth while it was running.**

In order for Plaintiff to prevail on her *Parret* claim, she must show that Cintas "acted with the knowledge that [Mr. Torres' death] was substantially certain to result from [Cintas's] conduct." *Parret*, 127 P.3d at 579. As the parties and the Court agree, this standard requires Cintas to have had "actual knowledge"; "imputed knowledge" will not suffice. (April 2, 2010 Hearing Tr. at 6:16-21.) The *Parret* Court made clear that an "employer's *subjective* appreciation of the substantial certainty of injury must be demonstrated." 127 P.3d at 579 (emphasis added). As the Tenth Circuit has held, a <u>single Cintas manager or supervisor</u> must have this actual, subjective knowledge. *Magnum Foods, Inc. v. Continental Cas. Co.*, 36 F.3d 1491, 1500 n.10 (10th Cir. 1994). Moreover, that single manager or supervisor must also be the person who intentionally acted to cause Mr. Torres' death. *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1960). Accordingly, evidence that the requisite knowledge was possessed by

a non-managerial or non-supervisory employee, like a washroom operator, is insufficient. Similarly, a showing by Plaintiff that the requisite knowledge was "collectively" held by Cintas's management (by, for example, showing that one manager knew Mr. Torres was involved in certain conduct and that another manager knew such conduct was substantially certain to result in death) will not demonstrate that Cintas was "substantially certain" that an injury would occur. Only a showing that an individual Cintas manager or supervisor had all of the requisite knowledge and intent would entitle Plaintiff to prevail on her intentional tort claim.

The Tenth Circuit has explained that in cases like this one, involving allegations that a *corporation* committed an intentional tort, a plaintiff cannot establish the corporation's knowledge or intent through evidence of the collective knowledge or intent of the corporation's employees. *Id.* ("[W]hile in some cases, a corporation may be held constructively responsible for the composite knowledge of all of its agents, whether acting in unison or not, we are unwilling to apply the rule to fix liability where, as here, intent is an essential ingredient of tort liability as for deceit." (internal citations omitted)). Instead, the plaintiff must show that the specific individual who committed the allegedly tortious act possessed the knowledge or intent required for the tort:

> For purposes of determining whether a statement made by the corporation was made with the requisite Rule 10(b) scienter[,] we believe it appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment. This is consistent with the general common law rule that where, as in fraud, an essentially subjective state of mind is an element of a cause of action also involving some sort of conduct, such as a misrepresentation, the required state of mind must actually exist in the individual making (or being a cause of the making of) the

> misrepresentation, and may not simply be imputed to that
> individual on general principles of agency.

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (10th Cir. 2004) (*citing,*

*e.g., Woodmont*, 274 F.2d at 137); *see also, e.g., Gutter v. E.I. DuPont de Nemours*, 124

F. Supp. 2d 1291, 1311 (S.D. Fla. 2000) ("The knowledge necessary to form the requisite

fraudulent intent must be possessed by at least one agent and cannot be inferred and imputed to a

corporation based on disconnected facts known by different agents."); *First Equity Corp. of Fla.*

*v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988) ("While it is not disputed

that a corporation may be charged with the collective knowledge of its employees, it does not

follow that the corporation may be deemed to have a culpable state of mind when that state of

mind is possessed by no single employee.  A corporation can be held to have a particular state of

mind only when that state of mind is possessed by a single individual."), *aff'd*, 869 F.2d 175 (2d

Cir. 1989).

This principle applies equally to claims against corporate *employers* for intentional torts.

*Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464, 477-80 (Mich. 1993) (Justices Brickley,

Griffin, Riley, and Boyle holding that employee could not prove claims for false arrest,

intentional infliction of emotional distress, and other torts by aggregating knowledge or intent of

corporation's employees; "We hold that intent to commit tortious acts cannot be imputed to a

corporation on the basis of disconnected facts possessed by various employees or agents of that

corporation, where there is no evidence that any employee possessed the requisite state of

mind.").  Accordingly, a plaintiff must show that *a specific individual*, rather than a corporate

employer as a whole, possessed the knowledge or intent necessary for the tort.

Applying Oklahoma law, the Tenth Circuit has also explicitly held that where, as here,

claims of "direct corporate liability" are concerned, "knowledge may be imputed to a corporate

employer from information obtained by <u>supervisory</u> employees and agents—including *but not limited to* officers and directors—in the course and scope of their employment."[10]  *Magnum Foods, Inc.,* 36 F.3d at 1500 n.10 (*citing Tidal Oil Co. v. Forcum*, 116 P.2d 572, 575 (Okla. 1941)) (underlined emphasis added; italicized emphasis in original).  Other courts are in accord.  *Weimerskirch v. Coakley*, No. 07AP-952, 2008 WL 928396, ¶ 10 (Ohio Ct. App. Apr. 8, 2008) ("Knowledge of a dangerous condition or risk can only be imputed to an employer through *senior management*." (*citing Witzgall v. Fenton Rigging Co.*, No. C870365, 1988 WL 68683 (Ohio Ct. App. June 29, 1988)) (emphasis added)).

It is this standard – ***not*** the standard for *respondeat superior* – that governs whose knowledge may be attributed to Cintas.  To begin with, *respondeat superior* is *not* a basis for imputing an employee's *knowledge* to his employer, but rather is a basis for holding an employer *vicariously liable* for his employee's *acts*.  *See Rodebush by and through Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1245 (Okla. 1993) (noting that employer generally is not liable for *assault* committed by employee, but may be where "[a]n employee's *act* is . . . incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer" (emphasis added; citations omitted)).  It is the principles set forth in *Magnum Foods, Inc.,* 36 F.3d at 1500 n.10, that govern when an employee's <u>knowledge</u> should be imputed to his or her employer.

Second, even assuming *respondeat superior* could be used as a basis for imputing knowledge instead of liability for acts (which it cannot), it still would not apply here, because Plaintiff asserts a claim for *direct* corporate liability (like negligent hiring or an employer-

_____

[10] The Court has already recognized that Plaintiff's *Parret* claim is one for direct corporate liability, not vicarious corporate liability.  (Dkt. 403 at 19.)

intentional-tort), not *vicarious* corporate liability (like an employer's *respondeat superior* liability for the intentional tort of a co-employee), against Cintas.  The Tenth Circuit, applying Oklahoma law, has noted the validity and importance of this distinction:

> When a corporation itself has a duty, like the non-delegable duty not to hire or retain dangerous employees, and breaches that duty through the acts or omissions of its employees, it is held *directly* liable for that negligence. In contrast, the doctrine of *respondeat superior* holds a corporation, as employer, liable for the torts of its employees acting in the course or scope of employment. *Handy v. City of Lawton,* 835 P.2d 870, 873 (Okla.1992) (ruling that employer is liable for harm inflicted while the agent is acting within the scope of employment and the act is an incident of the employee's service to the principal). In other words, under *respondeat superior*, a blameless corporation may be held liable for the torts of its employees committed while acting within the scope of their employment as an incident of their work.

*Magnum Foods*, 36 F.3d at 1499 (emphasis in original).

The distinction between a corporation's direct and vicarious liability for the acts of its employees is also evident in the Oklahoma Supreme Court's jurisprudence.  Under *Parret*, an employer is directly liable only if it "acted with the knowledge that such injury was substantially certain to result from the employer's conduct."  127 P.3d at 579.  Yet an employer is liable under *respondeat superior* if the employee's act "is one which is 'fairly and naturally incident to the business', and is done 'while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business."  *Rodebush*, 867 P.2d at 1245 (citations omitted).  If *respondeat superior* principles could be engrafted onto direct actions against employers for intentional torts, then the *Parret* opinion and the standard it established would be completely superfluous.  Indeed, it is telling that the *Parret* Court never once discussed *respondeat superior*.

Moreover, as the *respondeat superior* standard is significantly broader than the one in *Parret*, its use in the employer intentional tort context would mark a vast expansion of this type of employer liability, which the Oklahoma Supreme Court has repeatedly declared is a "narrow . . . exception to workers' compensation exclusivity." *Parret*, 127 P.3d at 579. Accordingly, as this Court has already observed, cases concerning *respondeat superior* are "not applicable" to the question of whether an employee's knowledge may be imputed to his employer, because they "generally concern[] an employer's liability for the intentional torts of its employees," whereas "[a] *Parret* claim is an intentional tort directly against the employer." (Dkt. 403 at 19. *See also Weimerskirch*, 2008 WL 928396, ¶¶ 7-8.[11] Only cases involving direct actions against the employer are relevant, and in those cases, an employee must be a manager or supervisor before his knowledge will be imputed to his employer. *Magnum Foods*, 36 F.3d at 1500 n.10.

When these holdings are considered together and are applied to the facts of this case, they lead to a single, inescapable conclusion: Plaintiff can only prove that Cintas actually, subjectively knew that Mr. Torres' death was substantially certain to result from an intentional act by showing that: (1) a specific Cintas manager or supervisor knew that Mr. Torres was jumping on jammed clothing at the dryer's mouth while the dryer was running; (2) the same manager or supervisor knew that Mr. Torres was substantially certain to die; and (3) the same manager or supervisor intentionally acted to cause Mr. Torres' death. Cintas has proposed jury

---

[11] For the same reason, there is no merit to Plaintiffs' argument, asserted in her reply in support of her omnibus motion *in limine*, that Oklahoma law clearly indicates that non-managerial employees' knowledge and intent can be imputed to a corporate employer insofar as Oklahoma law provides that an employer can be held liable for punitive damages for its employees' intentional, tortious actions even without proof that it ratified those actions. (Dkt. 366 at 10 (*citing Bierman v. Aramark Refreshment Servs.*, 198 P.3d 877, 884 (Okla. 2008)).) That rule was announced in a case in which the employer was found liable under *respondeat superior* for punitive damages awarded against *its employee*. It therefore makes perfect sense that there would be "no requirement that an employer participate or ratify the conduct of an employee" to be liable for punitive damages awarded against that employee. *Bierman*, 198 P.3d at 884. In this case, however, Plaintiff has asserted a claim directly against Cintas, so cases addressing *respondeat superior*, and liability for punitive damages under *respondeat superior*, do not apply. (Dkt. 403 at 19.)

instructions that will clearly explain this to the jury.  (*See* Cintas Proposed Jury Instructions Nos. 9, 10, 11.)

### C. The Jury and Plaintiff Should Be Barred From Speculating About Pain and Suffering

Plaintiffs have not produced any fact witnesses who observed Mr. Torres at the time of or during his accident.  Nor have they identified or designated any expert to opine on the issue of whether Mr. Torres had conscious pain before he died.  Plaintiff cannot recover damages for pain and suffering without producing evidence that Mr. Torres actually suffered pain as a result of the accident, and in the absence of such testimony, or expert testimony, there is no basis for a jury to award damages for pain and suffering.  *See Fanning v. Sutton Motor Lines, Inc.*, 2010 WL 560344, at *3 (D. Kan. Feb. 26, 2010) (plaintiffs could not establish pain and suffering without eyewitness testimony of accident based on "mere possibility that the decedent's heart continued to function for a brief period of time [after the accident].").  *See also Lee v. Swyden*, 319 P.2d 1009, 1014 (Okla. 1957) (mere statement by a witness that a decedent was in pain is not enough to establish pain and suffering).

This Court has already held that Plaintiff and her witnesses "are prohibited from speculating about pain and suffering."  (Dkt. 403 at 4-5.)  The jury also cannot engage in such speculation, and should be instructed that they may not base their damage award on any improper speculation about pain and suffering endured by Mr. Torres.  (*See* Cintas Proposed Jury Instructions No. 15.)

## III. CONCLUSION

For the foregoing reasons, Cintas respectfully requests that the Court grant its proposed jury instructions, and requests that the Court grant the other relief requested in this brief.

Respectfully submitted,

/s/ Gregory M. Utter
Gregory M. Utter
Matthew K. Buck
KEATING MUETHING & KLEKAMP PLL
1 E. Fourth Street, Suite 1400
Cincinnati, OH 45202
Phone: (513) 579-6400
Fax: (513) 579-6457

Gene Robinson, OBA #10119
THE ROBINSON LAW FIRM, P.C.
1100 Remington Tower
5810 East Skelly Drive
Tulsa, Oklahoma 74135
Phone: (918) 587-2311
Fax: (918) 587-2317

*Attorneys for Defendant, Cintas Corporation*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on April 13, 2010, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system and will serve counsel of record via electronic mail.


/s/Gregory M. Utter
Gregory M. Utter

3400755